In the Matter of a Member of the Bar of the Supreme Court of the State of Delaware Bonnie M. BENSON, Respondent.

No. 135, 2001.

Supreme Court of Delaware.

Submitted: April 9, 2001.

Decided: June 15, 2001.

---

Charles Slanina, Tybout, Redfearn & Pell, Wilmington, Delaware, for respondent.

Michael S. McGinniss, Wilmington, Delaware, for the Office of Disciplinary Counsel.

Before: VEASEY, Chief Justice, WALSH, and BERGER, Justices.

PER CURIAM.

This is a lawyer disciplinary proceeding. A panel of the Board on Professional Responsibility (Board) issued its final report (Final Report) with regard to five counts of professional misconduct involving the respondent, Bonnie M. Benson. Following a hearing on the charges, the Board adopted the stipulation of facts presented jointly by Benson and the Office of Disciplinary Counsel (ODC). The Board also approved the parties' joint recommended sanction consisting of a private admonition

and two-year private probation. The parties have indicated no objections to the Board's Final Report. After careful consideration, the Court has determined that the appropriate sanction in this case is a public reprimand and two-year public probation.

### Stipulated Facts

The following facts are taken from the parties' Pre–Hearing Stipulation and Joint Recommendation of Sanction (Stipulation):

Benson was admitted to the Delaware Bar in 1983. She is a solo practitioner with an office in Camden, Delaware and was practicing as a solo practitioner throughout the time when the misconduct occurred. In August 2000, Martin Zukoff, C.P.A., conducted a compliance audit on behalf of the Lawyers' Fund for Client Protection to determine: (1) whether Benson's books and records were in compliance with the record keeping requirements of Rule 1.15 of the Delaware Lawyers' Rules of Professional Conduct (DLRPC); and (2) whether Benson's Annual Registration Statements, which were filed with this Court in 1998, 1999, and 2000, and contained certifications that her books and records were in compliance, were accurate. At ODC's request, Zukoff also conducted an investigative audit of Benson's law practice to review Benson's payroll tax filing and payment obligations.

Zukoff's August 16, 2000 Report identified three areas of noncompliance with the requirements of Rule 1.15(d) and former Interpretive Guideline No. 2: (1) no client trust account reconciliations were performed from November 1997 until May 31, 2000, and trust account deposit and check transactions were not entered in Benson's accounting software program until May 31, 2000; (2) no monthly listings of client balances were prepared (showing client name, balance, and the total of all client balances) from November 1997 until May 31, 2000;

and (3) no reconciliation of end-of-month cash balances to the total of client balances were performed from November 1997 until May 31, 2000. Notwithstanding these known deficiencies, Benson certified to the Court in her 1998, 1999, and 2000 Annual Registration Statements that she was in compliance with the record keeping requirements of the DLRPC.

Zukoff's Report also reflected that Benson had failed to comply with her obligations to file certain law practice payroll tax returns and forms and to pay certain payroll tax obligations in a timely manner from November 1997 to August 2000. Specifically, Benson had failed to file timely federal or state copies of W–2 forms for her employees for tax years 1997, 1998 or 1999. Benson also failed to file timely the required annual federal unemployment tax return for tax years 1998 or 1999 or make the required payments for such taxes until October 2000.

Also according to Zukoff's Report, Benson's monthly federal employee withholding payments for income, Social Security, and Medicare taxes, and employer taxes for Social Security and Medicare were delinquent, with delays ranging from two days to 92 days. From January 1998 through July 2000, Benson's quarterly Delaware unemployment tax returns and payments were delinquent, with delays ranging from seven days to as long as 20 months. From March 1998 to April 2000, all but four of Benson's monthly Delaware employee income withholding tax returns and payments were delinquent, with delays ranging from seven days to 74 days. On her 1998, 1999, and 2000 Annual Registration Statements, Benson incorrectly certified that "[a]ll federal, state and local payroll, gross receipts and income taxes have been filed and paid on a timely basis."

Zukoff conducted a follow-up compliance and investigatory audit on March 1, 2001.

In a second report dated March 5, 2001, Zukoff indicated that Benson had rectified the previous areas of noncompliance found in his earlier report.

### Board's Findings and Recommendations

Benson admitted, and the Board found, five violations of the DLRPC. First, by failing to pay various federal and state employee and employer payroll taxes owed for her law practice in a timely manner from November 1997 to October 2000, Benson violated Rule 1.15(b).[1] Second, by failing to maintain her law practice books and records, Benson violated Rule 1.15(d)[2] and former interpretive guideline No. 2. Third, by failing to file her 1998 and 1999 federal unemployment tax returns until October 2000, and by making consistently delinquent filings and payment in connection with other law practice payroll tax obligations, Benson violated Rule 8.4(d).[3] Fourth, Benson also violated Rule 8.4(d) by certifying to this Court in 1998, 1999, and 2000 that her law practice books and records were in compliance with the requirements of Rule 1.15. Fifth, Benson committed a third violation of Rule 8.4(d) by certifying to the Court in 1998, 1999, and 2000 that her tax obligations were paid in a timely manner.

The Board also adopted the parties' stipulation as it related to aggravating and mitigating factors. Specifically, the parties stipulated that the following aggravating factors existed: (a) Benson has substantial experience in the practice of law; and (b) Benson engaged in a pattern of misconduct over an extended period of time.

The stipulated mitigating factors were: (a) Benson has no prior disciplinary record; (b) Benson has undertaken extensive remedial efforts to resolve her outstanding tax delinquencies, including the retention of an accountant and professional bookkeeping service, has escrowed funds necessary to meet her tax obligations, and has been complying with her ongoing books and records and tax obligations; (c) Benson fully cooperated with the ODC's investigation; (d) Benson had other penalties imposed in the form of IRS penalties and interest and has incurred substantial accounting and other costs in implementing remedial measures; and (e) Benson has demonstrated remorse and has recognized the wrongfulness of her conduct. Additionally, the Board also found as a mitigating factor that no client or third person was harmed by Benson's conduct.

At the hearing, the Board heard testimony from three witnesses: Zukoff, Robert L. Fox, CPA, Benson's accountant; and Benson herself. At the conclusion of the hearing, the Board expressed its intent to accept the parties' stipulation and joint recommendation of sanctions. Ultimately, the Board submitted its Final Report recommending a private admonition and a private two-year period of probation subject to conditions.

### This Court's Review

■ The parties have not filed any objections to the Board's Final Report.

---

1. Del.L.R.Prof.Cond. 1.15(b) provides: "A lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property."

2. Del.L.R.Prof.Cond. 1.15(d) sets forth in detail the specific record keeping requirements to which a lawyer's books and records must conform.

3. Del.L.R.Prof.Cond. 8.4(d) provides that it is professional misconduct for a lawyer to "engage in conduct that is prejudicial to the administration of justice."

Nonetheless, this Court has an obligation to review the record independently and determine if there is substantial evidence to support the Board's factual findings.[4] We have made a careful and independent review of both the factual findings and the conclusions of law that are set forth in the Board's Final Report. We are satisfied that the record supports the Board's findings that Benson committed five violations of the DLRPC. We now consider the appropriate sanction to be imposed.

### Sanction

This Court has the inherent and exclusive authority for disciplining the members of the Delaware Bar.[5] Thus, while the Board's recommendations on the appropriate discipline to be imposed are helpful, they are not binding on this Court.[6] In formulating an appropriate sanction, this Court has cited with approval to the framework set forth in the ABA Standards for Imposing Lawyer Discipline ("ABA Standards"). That framework recommends four key factors be considered by the Court: (a) the ethical duty violated; (b) the lawyer's mental state; (c) the extent of the actual or potential injury caused by the lawyer's misconduct; and (d) aggravating and mitigating factors.[7] The Court also will look to relevant Delaware precedent to ensure that the sanction imposed is consistent with sanctions imposed in similar prior disciplinary cases.[8]

In this case, the record reflects that Benson violated duties owed to her clients by failing to properly maintain her books and records. She also violated duties owed to the legal system and to the profession by failing to file and pay her tax obligations in a timely manner and for certifying to this Court for three consecutive years that her books and records were in compliance and that her tax obligations were current when, in fact, her books were not in compliance and she was delinquent with her tax obligations. While we accept the Board's finding that Benson's misconduct was not intentional, we are concerned that her apparent inattentiveness to her obligations to the Court and to the taxing authorities continued for so many years. Moreover, even though Benson's violations did not result in any injury to her clients, her careless record keeping certainly had the potential to cause injury because of the difficulty in ascertaining that all client funds in fact were being properly maintained.

Although the Board found implicitly that the substantial mitigating factors weighed in favor of a private sanction for Benson, we do not agree for several reasons. First, Benson's violations were not isolated incidents but continued without correction for several years. Second, Benson's violations are of a type that could be readily repeated, and a public sanction, in addition to probation, will serve as an important preventive measure. Third, public discipline affords the Court the opportunity to inform not only other members of the Bar but the general public that the Court takes very seriously a lawyer's obligation to maintain orderly books and records and to fulfill tax obligations. A lawyer's duty to maintain proper books and records ex-

---

4. *In re Benge*, Del.Supr., 754 A.2d 871, 878 (2000).

5. *In re Green*, Del.Supr., 464 A.2d 881, 885 (1983).

6. *In re Howard*, Del.Supr., 765 A.2d 39, 42 (2000)

7. *In re Lassen*, Del.Supr., 672 A.2d 988, 998 (1996).

8. *See In re Reardon*, Del.Supr., 759 A.2d 568, 580 (2000).

ists for the purpose of protecting not only the lawyer but the lawyer's clients, and the failure to fulfill that duty presents serious risks to the lawyer's clients, even if no actual harm results. In our view, a public sanction will deter other lawyers from similar misconduct. Moreover, this Court's means of monitoring a lawyer's compliance with record keeping obligations is dependent upon the lawyer's accurate, written representations as part of the annual registration process. Even though Benson did not make intentional misrepresentations to the Court in this case, she clearly failed to exercise the required care and attention in making her annual certifications.

A public sanction also is consistent with this Court's prior decisions in other cases involving similar disciplinary charges of failing to maintain proper books and records and/or failing to pay payroll taxes.[9] Although the Board distinguished those prior cases because they involved other aggravating factors not present in Benson's case, we, nonetheless, find that a public sanction in this case is more consistent with our line of precedent. A private sanction may be appropriate for a lawyer who has engaged in an isolated record-keeping violation or for an isolated incident involving delinquent payroll taxes, but Benson's negligent failure for three consecutive years to determine whether the certifications made to this Court in her 1998, 1999, and 2000 Annual Registration Statements were accurate reflects a pattern of misconduct that justifies the imposition of a public reprimand rather than a private admonition.

---

9. *See, e.g., In re Tyler,* Del.Supr., No. 374, 2000, Holland, J., 2000 WL 1508634 (Sept. 5, 2000) (imposing public reprimand and probation upon a respondent, who had a prior disciplinary record, for record keeping and reporting violations); *In re Gregory,* Del. Supr., No. 433, 1995, Veasey, C.J., 1996 WL 21039 (Jan. 4, 1996) (imposing public reprimand upon respondent, who had prior disciplinary record, for failure to pay substantial payroll taxes); *In re Dodge & O'Brien,* Del. Supr., No. 249, 1989 (July 17, 1989) (imposing public reprimand for failure to pay FICA and State withholding taxes).

## Conclusion

Benson should be publicly reprimanded for her violations of Rule 1.15(b), Rule 1.15(d) and former Interpretive Guideline No. 2, and Rule 8.4(d). Benson also should be subject to a public two-year period of probation, subject to the following terms:

(1) The period of probation shall begin June 15, 2001 and end June 14, 2003;

(2) During the first year of the probationary period, on or before the 20th of each month, Benson shall file with the ODC an affidavit by a licensed certified public accountant that all of her law practice books, records, and bank accounts have been maintained during the preceding month in full compliance with Rule 1.15 and that all law practice payroll tax obligations for the preceding month have been satisfied in compliance with applicable law;

(3) During the second year of the probationary period, on or before the 20th of the first month of the following quarter and every quarter thereafter, Benson shall file with the ODC an affidavit by a licensed certified public accountant that all of her law practice books, records, and bank accounts have been maintained during the preceding quarter in full compliance with Rule 1.15 and that all law practice payroll tax obligations for the preceding quarter have been satisfied in compliance with applicable law;

(4) Benson shall cooperate with the relevant federal and state governmental

authorities with respect to the payment of any and all payroll tax, penalty and interest obligations, either presently outstanding or which are asserted in the future, and in particular (a) Benson shall maintain at least $20,000 in an escrow account until such time as she reaches an agreement with the Internal Revenue Service, through active negotiations made on her behalf by a licensed certified public accountant, with respect to back payroll tax, penalty, and interest obligations, and (b) Benson shall make payment in full from these escrow funds pursuant to a negotiated agreement with the IRS;

(5) Benson shall cooperate promptly and fully with the ODC in its efforts to monitor compliance with her probation, including, but not limited to, providing the ODC with quarterly written reports as to the status and progress of negotiations with the IRS concerning back payroll tax, penalty, and interest obligations. Benson shall cooperate with the ODC's investigation of any allegations of unprofessional conduct which may come to the attention of the ODC. Upon request of the ODC, Benson shall provide authorization for release of information and documentation to verify compliance with the terms of her probation; and

(6) Benson shall pay the ODC's costs in this disciplinary matter promptly upon presentation of a statement of costs by the ODC. Benson also shall pay the costs of the audits performed by Martin Zukoff promptly upon presentation of a statement of such costs.