In the Matter of a Member of the Bar of the Supreme Court of Delaware Herbert G. FEUERHAKE, Respondent.

No. 41, 2014.

Supreme Court of Delaware.

Submitted: Feb. 26, 2014.
Decided: April 4, 2014.

Jennifer–Kate Aaronson, Esquire, Office of Disciplinary Counsel, Wilmington, Delaware.

Herbert G. Feuerhake, pro se.

Before HOLLAND, JACOBS and RIDGELY, Justices.

PER CURIAM:

This is an attorney disciplinary matter involving Herbert G. Feuerhake's practice of law during a disciplinary suspension imposed by this Court. In a report dated January 30, 2014 (the "Report"), a Panel of the Board on Professional Responsibility (the "Panel") found that Feuerhake had violated Rules 3.4(c) and 8.4(d) of the Delaware Lawyers' Rules of Professional Conduct and Rule 7(c) of the Delaware Lawyers Rules of Disciplinary Procedure. The Panel recommended disbarment. Feuer-

hake objects to the Panel's recommended sanction and argues that we should extend his suspension. We find no merit to his objection and order disbarment.

## I. Facts and Procedural History [1]

Feuerhake was admitted to the bar in 1987 and engaged in private practice until July 2010. On July 13, 2010, this Court entered an order suspending Feuerhake from the practice of law for two years (the "Suspension Order").[2] In relevant part, the Suspension Order provides:

> 3. During the period of suspension, Respondent shall conduct no act directly or indirectly constituting the practice of law, including the sharing or receipt of any legal fees, except that Respondent shall be entitled to any legal fees earned before the date of this Order.

> 4. Respondent shall be prohibited from having contact with clients or prospective clients, witnesses, or prospective witnesses when acting as a paralegal, legal assistant, or law clerk under the supervision of a member of the Delaware Bar or otherwise.[3]

During his suspension, Feuerhake worked as a paralegal under the supervision of Jeffrey K. Martin, Esquire. But Feuerhake never provided Martin with a copy of the Suspension Order. Nor did he inform Martin of this Court's prohibition on his ability to practice law during his suspension. The record also demonstrates that there was sufficient staff available at Martin's office to return phone calls and contact clients.

Following his suspension, Feuerhake communicated with a client, Ms. Lamb, to

---

1. The facts, taken from the Panel's Report, are not disputed by the parties. *See In re Feuerhake,* No. 2012–0025–B (Del.Bd.Prof.Respons. Jan.30, 2014) [hereinafter Report].

2. *In re Feuerhake,* 998 A.2d 850, 2010 WL 2757030 (Del.2010).

3. *Id.* at *4.

inquire about facts related to her case. They planned for and later discussed the results of a pretrial conference. Feuerhake also spoke with another client, Ms. Barkes, up to twenty times to discuss the contents of briefs he wrote and filings by opposing counsel. Feuerhake also attended four depositions at which Ms. Barkes was present and communicated with the four different witnesses being deposed.

In conjunction with these specific violations, Feuerhake continued to engage in the practice of law in violation of the Suspension Order. He discussed cases with clients. He exchanged emails with opposing counsel about a draft pre-trial order and commented substantively on its contents. Feuerhake also attended a pre-trial conference before the District Court on behalf of a client. Although Feuerhake noted on the record that he was only attending as a paralegal, he nonetheless addressed the court, made arguments and objections, responded to opposing counsel, and tried to distinguish case law.

Finally, Feuerhake received $39,466.66 as his share of a contingency fee from a settlement agreement. Even though the Suspension Order prohibited Feuerhake from receiving any legal fees following his suspension, the settlement payment was for work he performed both before and after his suspension. Rather than calculate the appropriate division from the settlement, Feuerhake chose instead to take his full share because he claimed that a more precise figure would have been too difficult to calculate and because he was proud of the quality work he provided to his client.

In 2013, the Office of Disciplinary Counsel ("ODC") filed a Petition for Discipline against Feuerhake. After an investigation and a hearing, the Panel found that Feuerhake had violated Rules 3.4(c) and 8.4(d) of the Rules of Professional Conduct and Rule 7(c) of the Rules of Disciplinary Procedure. To determine the appropriate sanction, the Panel considered six aggravating factors and one mitigating factor. Feuerhake's aggravating factors included (1) his prior disciplinary record, (2) his year-and-a-half pattern of misconduct, (3) the multiple offenses of misconduct, (4) a refusal to acknowledge the wrongfulness of his conduct, and (5) his substantial experience in the practice of law since 1987. His mitigating factor included his cooperation with the ODC and the disciplinary proceedings.

The ODC urged the Panel to recommend a sanction of disbarment. Feuerhake advocated for an extended suspension. The Panel ultimately recommended a sanction of disbarment. Feuerhake's objection to the Panel's Report followed.

## II.  Supreme Court Review

This Court has "inherent and exclusive authority to discipline members of the Delaware Bar."[4] Although the recommendations of the Board of Professional Responsibility are helpful, "we are not bound by those recommendations. Our role is to review the record independently and determine whether there is substantial evidence to support the Board's factual findings."[5] We review *de novo* the Board's conclusions of law.[6]

Rule 8.4(d) of the Delaware Lawyers' Rules of Professional Conduct provides: "It is professional misconduct for a lawyer to . . . engage in conduct that is prejudicial

---

4.  *In re Abbott*, 925 A.2d 482, 484 (Del.2007) (quoting *In re Froelich*, 838 A.2d 1117, 1120 (Del.2003)).

5.  *Id.* (citing *Froelich*, 838 A.2d at 1120).

6.  *Id.* (citing *Froelich*, 838 A.2d at 1120).

to the administration of justice." [7] Rule 3.4(c) provides that a lawyer shall not "knowingly disobey an obligation under the rules of a tribunal, except for an open refusal based on an assertion that no valid obligation exists." [8] Finally, Rule 7(c) of the Delaware Lawyers' Rules of Disciplinary Procedure states: "It shall be grounds for disciplinary action for a lawyer to ... [v]iolate the terms of any conditional diversion or private or public disciplinary or disability disposition." [9]

■ In the proceeding below, the Panel found that Feuerhake violated two Rules of Professional Conduct and one Rule of Disciplinary Procedure. Feuerhake violated Rule 3.4(c) when he knowingly disobeyed the terms of his Suspension Order by continuing to practice law, appearing in District Court, attending depositions, contacting clients, and accepting fees for work performed after his suspension. This same conduct supports his violation of Rule 7(c) of the Rules of Disciplinary Procedure by violating the terms of his Suspension Order. Finally, his disregard of a binding order of this Court was prejudicial to the administration of justice. A suspended attorney cannot provide the necessary representation before a court, at a deposition, or by simply answering a client's questions. By ignoring a clear suspension order to the contrary, Feuerhake violated Rule 8.4(d) by prejudicially affecting the administration of justice.

Feuerhake concedes these violations. Further, there is adequate record evidence to support the Panel's findings by clear and convincing evidence.

## III. Sanctions

■ Having determined that there is sufficient evidence to support the Panel's findings, our next step is to make an independent determination of an appropriate sanction. In determining the appropriate sanctions for lawyer misconduct, we traditionally follow the American Bar Association (ABA) Standards for Imposing Lawyer Sanctions (the "ABA Standards").[10] This ABA framework requires that we determine (1) "the ethical duty violated;" (2) "the lawyer's state of mind;" and (3) "the actual or potential injury caused by the lawyer's misconduct." [11]

■ As set forth above, the record confirms that Feuerhake violated Rules 3.4(c) and 8.4(d) of the Delaware Lawyers' Rules of Professional Conduct and Rule 7(c) of the Delaware Lawyers' Rules of Disciplinary Procedure. The record also shows that Feuerhake acted with a knowing state of mind during the course of these violations. The mental state of knowledge occurs where there "is the conscious awareness of the nature or attendant circumstances of the conduct but without the conscious objective or purpose to accomplish a particular result." [12] Intent requires "the conscious objective or purpose to accomplish a particular result." [13]

In this case, Feuerhake concedes that he acted with knowledge during his violative conduct. He was consciously aware of his Suspension Order and the requirements thereof. Feuerhake continued to represent clients before the District Court, at a

---

7. Del. Lawyers' Rules Prof. Conduct R. 8.4(d).

8. Del. Lawyers' Rules Prof. Conduct R. 3.4(c).

9. Del. Lawyers' Rules Disciplinary Pro. R. 7(c).

10. *In re Tonwe,* 929 A.2d 774, 780 (Del.2007).

11. *Id.* (quoting *In re Steiner,* 817 A.2d 793, 796 (Del.2003)).

12. ABA Standards for Imposing Lawyer Sanctions, Definitions.

13. *Id.*

deposition, and in emails with opposing counsel. And he continued to have contact with clients and witnesses. Finally, Feuerhake received a contingent fee from a settlement for work that occurred before and after his suspension. He chose to accept this full payment because it would have been too difficult to determine proper computation.

It is also undisputed that there was potential injury as a result of Feuerhake's actions. His continued representation of client matters resulted in the reliance by the public, other attorneys, and the District Court on Feuerhake's ability to represent clients in such matters when he clearly was prohibited from doing so. Further, Feuerhake's failure to disclose his suspension to Martin, his supervising attorney during his suspension, put Martin at risk of discipline. Feuerhake's knowing violations left the impression that the Court permitted his conduct.[14]

■ We now turn to the appropriate sanction. For cases involving prior discipline, the ABA Standards provide four options for sanctioning an attorney and the basis to impose each sanction.[15] The options include:

8.1 Disbarment is generally appropriate when a lawyer:

(a) intentionally or knowingly violates the terms of a prior disciplinary order and such violation causes injury or potential injury to a client, the public, the legal system, or the profession; or

(b) has been suspended for the same or similar misconduct, and intentional-ly or knowingly engages in further similar acts of misconduct that cause injury or potential injury to a client, the public, the legal system, or the profession.

8.2 Suspension is generally appropriate when a lawyer has been reprimanded for the same or similar misconduct and engages in further similar acts of misconduct that cause injury or potential injury to a client, the public, the legal system, or the profession.

8.3 Reprimand is generally appropriate when a lawyer:

(a) negligently violates the terms of a prior disciplinary order and such violation causes injury or potential injury to a client, the public, the legal system, or the profession; or

(b) has received an admonition for the same or similar misconduct and engages in further similar acts of misconduct that cause injury or potential injury to a client, the public, the legal system, or the profession.

8.4 An admonition is generally not an appropriate sanction when a lawyer violates the terms of a prior disciplinary order or when a lawyer has engaged in the same or similar misconduct in the past.[16]

In this case, Feuerhake knowingly violated the terms of his prior Suspension Order causing potential injury to a client, the public, the legal system, and the profession.

Aggravating factors here include (1) Feuerhake's prior disciplinary record, (2)

---

14. *See In re Mekler*, 672 A.2d 23, 26 (Del. 1995) ("[T]his Court cannot countenance any conduct by a suspended lawyer which would leave the impression to a reasonable person that the Court would allow the same kind of 'business as usual' ... or that it is *de facto* permitting a suspended lawyer to be doing any act which a reasonable member of the public could believe to be the practice of law.").

15. ABA Standards for Imposing Lawyer Sanctions, 8.0.

16. *Id.* at 8.1–8.4.

his year-and-a-half pattern of misconduct, (3) the multiple offenses of misconduct, (4) a refusal to acknowledge the wrongfulness of his conduct, and (5) his substantial experience in the practice of law since 1987.[17] A mitigating factor is Feuerhake's cooperation with the ODC and the Panel in this disciplinary proceeding.[18]

To determine the whether the appropriate sanction should be a suspension or disbarment, we also rely on related Delaware case law. In *In re McCann*, we disbarred an attorney who, *inter alia*, was suspended from the practice of law but never made arrangements for another lawyer to handle his clients' matters.[19] In *In re Davis*, we disbarred an attorney, in part, because he knowingly disobeyed a suspension order by meeting with clients and continuing to act as an attorney.[20] In our *In re Tonwe* decision, we recommended to the Pennsylvania Supreme Court that Tonwe be disbarred for her continued practice in Delaware despite a cease and desist order.[21]

■ The ODC agrees with the Panel's recommendation of disbarment and urges this Court to impose that sanction. Feuerhake argues that disbarment is over-

ly punitive and instead suggests that a continued and extended suspension is more appropriate because he adequately performed during his suspension in aiding his clients. He further suggests that disbarment is inappropriate because he did not act wantonly or maliciously. We disagree. Disbarment is not limited to wanton or malicious misconduct. Disbarment is necessary to protect the public and the administration of justice, to preserve confidence in the legal profession, and to deter other lawyers from engaging in similar conduct during a period of suspension. Any other sanction would not sufficiently preserve the public's trust and confidence in the integrity of the disciplinary process for Delaware lawyers.

## IV. Conclusion

Now, therefore, it is hereby ordered that Herbert G. Feuerhake is disbarred effective immediately.

---

17. Report at 18.

18. *Id.*

19. *In re McCann*, 894 A.2d 1087, 1088 (Del. 2005).

20. *In re Davis*, 43 A.3d 856, 861 (Del.2012).

21. *Tonwe*, 929 A.2d at 781.