IN THE SUPREME COURT OF THE STATE OF DELAWARE

IN THE MATTER OF A MEMBER §
OF THE BAR OF THE SUPREME §
COURT OF THE STATE OF § No. 283, 2018
DELAWARE: §
§
§
ERIK C. GRANDELL §

Submitted:  June 18, 2018
Decided:    June 29, 2018

Before **STRINE**, Chief Justice; **SEITZ** and **TRAYNOR**, Justices.

## ORDER

This 29th day of June 2018, it appears to the Court that:

(1)    This is a lawyer disciplinary proceeding.  On May 29, 2018, the Board on Professional Responsibility filed its Report and Recommendation ("Board's Report") with this Court, recommending that the respondent, Erik C. Grandell, Equire, be publicly reprimanded and placed on a period of probation for two years, with the imposition of specific conditions. A copy of the Board's Report is attached to this order.  Neither the Office of Disciplinary Counsel nor Grandell has filed any objections to the Board's Report.

(2)    The Court has considered the matter carefully.  We find the Board's recommendation of a public reprimand with a two-year period of probation with conditions to be appropriate.  Thus, we accept the Board's

findings and recommendation for discipline and incorporate the Board's findings and recommendation by reference.

NOW, THEREFORE, IT IS ORDERED that the Board's Report is hereby ACCEPTED. The Office of Disciplinary Counsel shall disseminate this Order in accordance with Rule 14 of the Delaware Lawyers' Rules of Disciplinary Procedure.

BY THE COURT:

/s/ Gary F. Traynor
Justice

2

# BOARD ON PROFESSIONAL RESPONSIBILITY OF THE SUPREME COURT OF DELAWARE

Re:     Matter of a Member of the       :
        Bar of the Supreme Court of      :
        The State of Delaware            :
                                         :
                                         :     **Board Case No. 113458-B**
ERIK C. GRANDELL,                        :
Respondent                               :
                                         :

## BOARD REPORT AND RECOMMENDATION

This is the report of The Board on Professional Responsibility of the Supreme Court of the State of Delaware (the "Board") setting forth its findings and recommendations in the above-captioned matter.

The members of the panel of the Board (the "Panel") are Gary W. Ferguson, Jessica Zeldin, Esquire and Patricia O. Vella, Esquire (the "Chair"). The Office of Disciplinary Counsel (the "ODC") was represented by Jennifer-Kate Aaronson, Esquire. The Respondent, Erik C. Grandell, Esquire appeared *pro se*.

A hearing was held on December 14, 2017. After receiving the transcript, the parties filed post-hearing memoranda. Respondent filed his opening brief on February 8, 2018, ODC filed its answering memorandum on liability and sanctions on February 21, 2018, and Respondent filed his reply on March 19, 2018.

## I.     PROCEDURAL BACKGROUND

The ODC filed a Petition for Discipline on November 1, 2017 (the "Petition"). In the Petition, the ODC alleged a violation of Rule 7(c) ("Rule 7(c)") of the Delaware Lawyers' Rules of Disciplinary Procedure (the "Procedural Rules") and Rule 8.4(d) ("Rule 8.4(d)") of the

Delaware Lawyers' Rules of Professional Conduct (the "Rules"). Rule 7(c) provides that it "shall be grounds for disciplinary action for a lawyer to . . . [v]iolate the terms of any conditional diversion or private or public disciplinary or disability disposition." Rule 8.4(d) provides that it is "professional misconduct for a lawyer to . . . engage in conduct that is prejudicial to the administration of justice." On November 28, 2017, Respondent filed his answer to the Petition denying the allegations in the Petition.

## II.  FINDINGS OF FACT

Respondent was admitted to the Delaware Bar in 1989. (Tr. at 73). On October 14, 2013, ODC filed a Petition for Interim Suspension in the Delaware Supreme Court seeking Respondent's suspension from the practice of law pending resolution of multiple disciplinary cases. (ODC Ex. 2; Tr. at 75-78).[1] In response, Respondent filed a Motion to Transfer to Disability Inactive Status alleging he was incapable of defending the disciplinary proceedings. (Tr. at 75-78). Respondent's Motion was granted by the Delaware Supreme Court.

Following treatment with a mental health provider, Respondent notified ODC of his intent to petition the Court for transfer to active status. (Tr. at 84-86). Respondent discussed with ODC the conditions ODC would recommend if the Court granted Respondent's transfer back to active practice, including: Respondent shall meet on a monthly basis with a mutually agreed upon practice monitor who will closely review Respondent's legal work and cases and provide quarterly reports to ODC of the Respondent's compliance with the conditions of reinstatement. (Tr. at 87-88). Respondent acknowledged he had the opportunity to ask any questions to clarify the proposed conditions. (Tr. at 91-92). Thereafter, Respondent filed his Petition to Transfer to Active Status and Stipulation of Conditions with the Court. (ODC Ex. 3).

---

[1]     The transcript from the joint liability and sanction hearing held on December 14, 2017 is referred to as "Tr. at ___."

2

On December 10, 2014, the Court entered an Order transferring Respondent to active practice subject to the following conditions:

1.  Respondent was prohibited from engaging in the solo practice of law;
2.  Respondent was prohibited from acting as managing partner in charge of books and records of a firm;
3.  Respondent shall notify any employer of these conditions;
4.  Respondent shall remain in active treatment with a licensed mental health treatment provider;
5.  Respondent shall execute a formal monitoring agreement with DE-LAP and comply with all conditions deemed appropriate by DE-LAP;
6.  Respondent shall meet on a monthly basis with a mutually agreed upon practice monitor who would closely review Respondent's legal work and cases and the practice monitor would provide quarterly reports to ODC regarding Respondent's compliance with the conditions of reinstatement; and
7.  Respondent shall report to ODC any violations of the conditions of his transfer to active status.

(Jt. Ex. 1).

Thereafter, ODC proceeded with its prosecution of the underlying disciplinary cases that were pending when Respondent transferred to disability inactive status. Respondent proceeded *pro se*. (Tr. at 92-93). Prior to ODC's presentation of Respondent's five pending cases to the Preliminary Review Committee ("PRC"), Respondent knew ODC would recommend a private admonition to the PRC with conditions and probation. (Tr. at 93-94). On June 26, 2015, Respondent accepted the private admonition with a two-year probation and conditions offered by the PRC for the misconduct in those cases. (Jt. Ex. 2). Respondent consented to the following conditions:

1.  Respondent was prohibited from engaging in the solo practice of law;
2.  Respondent was prohibited from acting as managing partner in charge of books and records of a firm.
3.  Respondent shall notify any employer of these conditions;

3

4. Respondent shall remain in active treatment with a licensed mental health treatment provider;

5. Respondent shall execute a formal monitoring agreement with DE-LAP and comply with all conditions deemed appropriate by DELAP;

6. If Respondent engages in the practice of law, Respondent shall meet on a monthly basis with a mutually agreed upon practice monitor who would closely review Respondent's legal work and cases and the practice monitor would provide quarterly reports to ODC regarding Respondent's compliance with monitoring;

7. Upon request of ODC, Respondent would provide authorization for release of information and documentation to verify compliance with the conditions of probation; and

8. Respondent would reimburse the Camarda/Smith claim paid by the Lawyers' Fund for Client Protection ("LFCP") in the amount of $1,000.00 within sixty (60) days.

(Jt. Ex. 2). Prior to signing the Certificate of Consent accepting the sanction, Respondent admitted he read the private admonition and two-year probation with conditions offer and understood the conditions. (Tr. at 95-96). With the exception of Condition #8, reimbursement to the LFCP, the conditions were essentially identical to those imposed by the Court when it granted his reinstatement in December 2014. (Tr. at 96).

Between February 2016 and October 2016, Respondent was employed at Kent & McBride, P.C. ("K&M"), supervised by David Malatesta, Jr., Esquire ("Malatesta"). (Tr. at 34, 39). Respondent testified he never advised Mr. Malatesta of the condition requiring a mutually agreed upon practice monitor and quarterly reports to ODC. (Tr. at 101, 151).[2] Mr. Malatesta confirmed he knew nothing of the practice monitor condition and never submitted reports to ODC.[3] (Jt. Ex. 2, p. 7; Jt. Ex. 8; Tr. at 36-37). Respondent never asked Mr. Malatesta to call

---

[2] Respondent's testimony was in direct contradiction to his statement in his submission to the PRC: "We did discuss each of the terms in great detail though." (Jt. Ex. 11, p.4).

[3] Mr. Maletesta testified:
Q. What, if anything, did Mr. Grandell explain to you regarding any conditions or limitations on his ability to practice law?

4

ODC to inquire as to what must be reported to ODC in the quarterly practice monitor report. (Tr. at 100). Respondent did not even think Mr. Malatesta was his practice monitor. (Tr. at 147, 148). Mr. Malatesta terminated Respondent due to performance problems. (Tr. at 39-42).

Respondent admitted it was his obligation to comply with the conditions of the private admonition. (Tr. at 102). Respondent admitted he knew a practice monitor report was due at the end of his first quarter with K&M. (*Id.*). Respondent testified that he never notified ODC of his employment with K&M and that he thought that ODC was "monitoring" his compliance. (Tr. at 102-103). He also testified that he "was under the impression" that ODC was going to provide him with a name of practice monitor. (*Id.*).

The first time Respondent contacted ODC regarding his employment with K&M was after his termination. (ODC Ex. 7). Respondent testified that he discussed the practice monitor condition with ODC around that time. (Tr. at 170-71).

In March 2017, Respondent began working for Mattleman, Weinroth and Miller, P.C. ("MWM"). (Tr. at 105). Respondent testified he never notified ODC of his new employment. (Tr. at 111). ODC learned of Respondent's new employment upon receipt of a client complaint in April 2017. (Tr. at 111-12). Thereafter, Respondent advised ODC of his new employment. (Tr. 112-13.). Dominique Church, Esquire, currently serves as Respondent's practice monitor and has submitted quarterly reports to ODC. (Tr. at 110; Respondent Ex. 2 & 3).

---

(... continued)

> A. What I was told by Mr. Grandell was that he was not able to engage in solo practice, that he needed to work within a firm, and that the was not able to manage the books or oversee the books in terms of accounting requirements.
> Q. Were you provided any other information regarding any limitations or conditions on his practice?
> A. No. (Tr. at 36).

5

Respondent reimbursed the LFCP the $1,000 for the Camarda/Smith claim referenced in Condition #8 over two years after his reinstatement. (Jt. Ex. 7). Respondent initially advised ODC he had reimbursed the LFCP in a response to ODC's investigation of the April 2017 client complaint. (Jt. Ex. 3, p. 2; Jt. Ex. 5; Tr. at 111-113). On June 7, 2017, Respondent notified ODC he had not reimbursed the LFCP. (Jt. Ex. 4). Bunny Christopher, Executive Director for the LFCP, testified that Respondent called her on June 7, 2017, to inquire about payment. (Tr. at 125-130). Ms. Christopher sent an invoice the same day as Respondent's inquiry. (Jt. Ex. 7). The LFCP stamped the invoice as paid on August 17, 2017. (Jt. Ex. 7).

## III. RESPONDENT VIOLATED PROCEDURAL RULE 7(c) AND RULE 8.4(d).

### A. Procedural Rule 7(c)

The Delaware Supreme Court has held that the failure to comply with the terms of a private disciplinary sanction violates Procedural Rule 7(c). *In re Woods*, 143 A.3d 1223, 1226 (Del. 2016). ODC alleges that Respondent failed to comply with Conditions #3, 6 & 8 of his private admonition. (Jt. Ex. 2, p. 7). Condition #3 required Respondent to notify any employer of the conditions. (*Id.*). Respondent admitted he never notified Mr. Malatesta of Condition #6 – the requirement of monthly meetings with a practice monitor who would submit quarterly reports to ODC. (*Id.*; Tr. at 101, 151). Respondent also never submitted quarterly practice monitor reports to ODC while employed by K&M.[4] Based on the testimony of Mr. Malatesta, the Board finds that Respondent violated Condition #3 and Condition #6.

Condition #8 required Respondent to reimburse the LFCP within 60 days. (Jt. Ex. 2, p. 7). The LFCP did not receive payment for more than two years and only after ODC inquired as

---

[4] Respondent admitted that he did not consider Mr. Maletesta as his practice monitor. (Tr. at 147, 148).

6

to whether Respondent complied with Condition #8. (Jt. Ex. 4 & 7). Therefore, the Board finds that Respondent violated Condition #8.[5]

Respondent seeks to excuse his lack of compliance, claiming (1) that he thought ODC – who Respondent never notified that he was working – would provide him a practice monitor; and (2) that the LFCP did not sent him an invoice with instructions as to where to submit payment, such that the sixty days mentioned in Condition #8 never started to run. Respondent thereby claims he did not have the required mental state to violate Procedural Rule 7(c). Specifically, Respondent cites a contempt order case admittedly requiring "*willfulness or conscious disregard*" of a court order and claims that finding him liable for "mere technical violations" would be inconsistent with historic practice of Delaware courts when enforcing Court orders. Respondent Opening Brief at 3-4 (citing *Mitchell Lane Publishers, Inc. v. Rasemas*, C.A. No. 9144-VCN, 2014 WL 4804792 (Del. Ch. Sept. 26, 2014)).

ODC, on the other hand, argues that Procedural Rule 7(c), by its terms, does "not require proof of a lawyer's mental state and the Supreme Court has never required proof of a respondent's mental state to establish a violation of these rules." ODC Answering Memorandum on Liability and Sanctions at 7. We need not resolve the dispute as to whether proof of a lawyer's mental state is required to establish a violation of the Procedural Rule 7(c) (or Rule 8.4(d)), or, if so required, the particular mental state required, because, even if the standard relied upon by Respondent is applicable, ODC has established by clear and convincing evidence that

---

[5] The panel notes that the LFCP invoice was dated June 7, 2017, but was not stamped as paid by the LFCP until August 17, 2017.

7

Respondent acted with "willfulness" and "consciously disregarded" the terms of his prior disciplinary sanction giving rise to a violation of Procedural Rule 7(c).[6]

The Delaware Supreme Court has addressed the concept of "willful ignorance" in the context of an ethical violation. *In re Martin*, 105 A.3d at 975 (Del. 2014). In *In re Martin*, the Supreme Court found that there was substantial evidence in the record to support a finding of Martin's willful ignorance. *Id.* In that case, the Court found that Martin knew that Feuerhake, a suspended lawyer, was working for him yet he willingly allowed Feuerhake to move into his office space and continue to work on cases for him as a paralegal without reading the Court's suspension order and determining the restrictions on Feuerhake's ability to work for Martin as a paralegal. *Id.* The Court explained that a lawyer with Martin's experience, especially one with Martin's own recent disciplinary history, would have known that the Court's suspension order was publicly available and should have consulted it. *Id.* The Court reasoned: "Martin knew or intentionally remained ignorant of this Court's order suspending Feuerhake from practicing law. His admitted intentional ignorance of the Court's order should not absolve him of responsibility for complying with its terms." *Id.* Accordingly, the Court held that Martin knowingly violated the Rules as a result of his "willful ignorance." *Id.*

As in *Martin*, Respondent's conduct here demonstrates at least willful ignorance. Respondent no doubt had actual knowledge of the private admonition conditions. When Respondent was seeking transfer to active status and in resolving his five disciplinary cases, Respondent actively participated in drafting the stipulation of conditions. ODC requested the PRC to authorize a private admonition with the same conditions as those ordered by the Court

---

[6]    Based on relevant precedent as discussed herein, we find the Respondent even acted "knowingly" because in the disciplinary context, the Supreme Court has equated "willful ignorance" to "knowledge." *In re Martin*, 105 A.3d 967, 975 (Del. 2014).

8

upon Respondent's reinstatement to active practice with the exception of reimbursement to the LFCP. *In re Koyste*, 111 A.3d 581, 586 (Del. 2015) (lawyer who actively participated in drafting terms of protective order and acquiesced to terms had actual knowledge of the terms of the order). There is no evidence in the record that Respondent raised questions regarding the implementation or compliance with the conditions, and there is no evidence that Respondent raised any concerns regarding ambiguity. Respondent again reviewed the conditions prior to accepting the private sanction (Tr. at 108-09).

Knowing of these conditions, Respondent was not at liberty to remain willfully ignorant as to whether he was in compliance or consciously disregard any attempt to comply with them. At a minimum, once a quarter passed without him being assigned a practice monitor at the time his quarterly report was due, he should have consulted ODC. Instead, he took a "head in the sand" approach and did not ask for ODC's consent to a practice monitor. His decision to not consult ODC is not excused because ODC had taken a more active role in assigning a receiver when he went to disability status. One would expect ODC to have a more active role in selecting a receiver for a lawyer moving to disability status as compared to a lawyer who has returned from disability status and by his own account was ready to "return to a productive work lifestyle." (ODC Ex. 4 p. 3).

Respondent argues that even Ms. Waldhauser understood that ODC would provide the name of a practice monitor to Respondent: "I believe that it was ODC that would be setting that up and the reports would go directly, as in, generally, other matters, go directly to ODC, and that was not part of my monitoring." (Tr. at 137.). Even if you accept as true Respondent's understanding that ODC would select the practice monitor merely because Ms. Waldhauser had a similar view (never communicated to Respondent), that is no defense. Exercising conscious

9

disregard, Respondent never notified ODC that he was employed. There was no need for a practice monitor if Respondent was unemployed. This is merely another example of Respondent's "head in the sand" approach in failing to comply with his conditions.

The Board also rejects Respondent's argument that that he did not act willfully or consciously disregard Condition #8 when the conditions clearly provided that payment was due within 60 days. If he had a question regarding what "within 60 days meant" he should have asked. *See Holfeld*, 74 A.3d 608 (Court rejected "mistake" as a defense to violation of Procedural Rule 7(c)). This conduct, like Mr. Martin's, shows, at a minimum, that Respondent "remained ignorant" and would even support a finding of a "knowing" violation of Procedural Rule 7(c). *In re Martin*, 105 A.3d at 975 (finding a knowing violation of the Rules where attorney remained ignorant of court's order suspending another lawyer from practicing law); *see also In re Stull*, 2009 WL 4573243 (Del. 2009) ("head in the sand" approach to obligations without any particular objective was knowing conduct); *In re Nadel*, 82 A.3d 716, 722 (Del. 2013) (failure to determine any limits on pre-litigation assistance non-Delaware lawyer thought he could provide when "he had every opportunity to learn this information" supported a finding of a knowing violation).

Regardless, Respondent's failure to inform Mr. Malatesta of the conditions of his employment is an independent and knowing violation of Condition #3 that Respondent cannot blame on ODC or anyone else. Respondent's testimony, supported by the testimony of Mr. Malatesta and Ms. Christopher and documentary evidence, is clear and convincing evidence of Respondent's violation of Procedural Rule 7(c).

10

**B.      Rule 8.4(d).**

The Supreme Court has consistently held that a lawyer engages in conduct prejudicial to the administration of justice in violation of Rule 8.4(d) when that lawyer fails to satisfy a condition of a disciplinary sanction. *See Woods*, 143 A.3d at 1226 (Court found lawyer's failure to comply with a pre-certification condition in a private disciplinary sanction was prejudicial to the administration of justice in violation of Rule 8.4(d)); *see also Holfeld*, 74 A.3d at 608 (same); *In re Feuerhake*, 89 A.3d 1058 (Del. 2014) (knowingly violating suspension order is prejudicial to the administration of justice); *In re Davis*, 43 A.3d 856 (Del. 2012) (same).

As noted above, Respondent argues that the Board should find no violation of Rule 8.4(d) because his misconduct was not willful or done with a conscious disregard. As indicated above, while we need not address the legal issue of whether a violation of Rule 8.4(d) requires willfulness or conscious disregard, we conclude that there was a violation of Rule 8.4(d) because, as discussed above, we find that Respondent knowingly violated the condition of his disciplinary sanction requiring him to inform employers of the conditions of his reinstatement and acted with a conscious disregard or willful ignorance in respect of his requirement to obtain a practice monitor and reimburse LFCP. Therefore, we find that Respondent engaged in conduct prejudicial to the administration of justice under the teachings of *Woods*, *Holfeld*, *Feuerhake* and *Davis*.

We also reject Respondent's argument that we should not find a violation of Rule 8.4(d) because his conduct did not involve "violence, dishonesty, breach of trust or serious interference with the administration of justice." We disagree and find that a violation of a Court order imposing the sanction of a private admonition with conditions on a lawyer's practice of law involves a serious interference with the administration of justice. Such a finding is supported by *Woods*, *Holfeld*, *Feuerhake* and *Davis*.

11

## IV. PUBLIC REPRIMAND IS THE APPROPRIATE SANCTION FOR RESPONDENT'S VIOLATIONS.

Delaware precedent and the ABA Standards support public reprimand with probation and conditions as the appropriate sanction. "The objectives of the lawyer disciplinary system [in Delaware] are to protect the public, to protect the administration of justice, to preserve confidence in the legal profession, and to deter other lawyers from similar misconduct." *Fountain*, 878 A.2d at 1173. The focus of the attorney discipline system in Delaware is not on the lawyer, but rather on the danger to the public that is ascertainable from the attorney's record of professional misconduct. *See In re Hull*, 767 A.2d 197, 201 (Del. 2001) ("In Delaware, the paramount issue in any attorney discipline matter is the danger to the public that is ascertainable from an attorney's record of professional misconduct.").

To further the objectives of the disciplinary system and to promote consistency and predictability in the imposition of disciplinary sanctions, the Court looks for guidance to the four-factor test established by the ABA Standards: (1) the ethical duties violated by the lawyer; (2) the lawyer's mental state; (3) the extent of the actual or potential injury caused by the lawyers misconduct; and (4) the existence of aggravating and mitigating factors. *Fountain*, 878 A.2d at 1173. The first three factors lead to a preliminary determination of the appropriate sanction. The Board then reviews the particular aggravating and mitigating circumstances in the case to determine if an increase or decrease in the sanction is justified. *In re Steiner*, 817 A.2d 793, 796 (Del. 2003). An analysis of the ABA factors and Delaware precedent lead the Board to conclude that a public reprimand with probation and conditions is the appropriate sanction.

### A. Respondent violated ethical duties owed to the legal system in the legal profession

Violations of Procedural Rule 7(c) and Rule 8.4(d) breach duties owed to the legal system and the legal profession. ABA Standards, Theoretical Framework, p. 5. The ABA

Standards state: "Lawyers are officers of the court, and the public expects lawyers to abide by the legal rules of substance and procedure which affect the administration of justice." ABA Standard 6.0. Lawyers are expected to refrain from conduct interfering with the administration of justice. *Id.*

ABA Standards addressing conduct prejudicial to the administration of justice provide: "6.23: Reprimand is generally appropriate when a lawyer negligently fails to comply with a court order or rule, and causes injury or potential injury to a client or other party, or causes interference or potential interference with a legal proceeding."

ABA Standard 7.0 addresses violations of duties owed to the profession and provides, in relevant part: "7.3: Reprimand is generally appropriate when a lawyer negligently engages in conduct that is a violation of a duty owed as a professional, and causes injury or potential injury to a client, the public, or the legal system."

## B. Respondent Acted Knowingly

The Panel finds that Respondent acted knowingly when violating Procedural Rule 7(c) and Rule 8.4(d). The Delaware Supreme Court has stated:

> Under the [Delaware Lawyers' Rules of Professional Conduct], "knowing" misconduct denotes "actual knowledge of the fact in question." Because a person is presumed to intend the natural consequences of his or her actions, "knowing" misconduct may be inferred from the circumstances. Moreover, in the disciplinary context, we have equated "willful ignorance" to "knowledge."

*In re Martin*, 105 A.3d at 975. The Court in *In re Martin* held that a lawyer acts "knowingly" when acting with "willful ignorance." As discussed in detail above, Respondent acted, at a minimum, with "willful ignorance" and, thereby, acted knowingly.

13

## C. Respondent's Misconduct Caused Potential Harm

"'Injury' is harm to a client, the public, the legal system, or the profession which results from a lawyer's misconduct." ABA Standards, Definitions. "'Potential injury' is the harm to a client, the public, the legal system or the profession that is reasonably foreseeable at the time of the lawyer's misconduct, and which, but for some intervening factor or event, would probably have resulted from the lawyer's misconduct." ABA Standards, Definitions.

Respondent's failure to obtain a mutually agreed upon practice monitor who submitted quarterly reports to ODC had the potential for injury. Respondent's disciplinary sanction and practice monitor condition specifically stemmed from Respondent's failure to competently and diligently represent clients and failure to communicate with clients. The practice monitor condition was imposed to address the *risk* of reoccurrence of client harm.

## D. The Aggravating and Mitigating Factors

The applicable ABA aggravating factors[7] are (1) Respondent's prior disciplinary history (2015 private admonition); (2) a pattern of misconduct; (3) refusal to acknowledge the wrongful nature of his conduct; and (4) substantial experience in the practice of law.[8]

---

[7] Aggravating factors include the following: (a) prior disciplinary offenses; (b) dishonest or selfish motive; (c) a pattern of misconduct; (d) multiple offenses; (e) bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with rules or orders of the disciplinary agency; (f) submission of false evidence, false statements, or other deceptive practices during the disciplinary process; (g) refusal to acknowledge wrongful nature of conduct; (h) vulnerability of victim; (i) substantial experience in the practice of law; (j) indifference to making restitution; (k) illegal conduct." ABA Standard 9.22.

[8] The Panel is mindful of Respondent's factual assertions in his Reply Brief that are not supported by the record. For example, Respondent several times states that ODC informed Respondent that it would provide Respondent with the name and contact information of a practice monitor. *See* Respondent's Reply Brief at 2-4. Respondent provides no citation to the record for any of these statements and his contentions are not supported by the record. The panel is also mindful of Respondent's statement in his submission to the PRC that he did discuss each of the terms in great detail with Mr.

Respondent's prior disciplinary history, coupled with his refusal to acknowledge he violated the Rule, and instead arguing that ODC was to blame based on factual assertions in his Reply Brief that are not supported by the record, warrant a public reprimand with probation and conditions.

### E. Delaware Precedent and the ABA Standards Support Public Reprimand with Probation and Conditions as the Appropriate Sanction

Public reprimand with probation and conditions is consistent with the Supreme Court's disciplinary precedent and ABA Standards. *See Woods*, 143 A.3d at 1226; *Holfeld*, 74 A.3d at 607; *In re Wilson*, 886 A.3d 1279 (Del. 2005); *In re Martin*, 35 A.3d 419 (Del. 2011). Respondent knowingly violated multiple conditions of his private sanction while on disciplinary probation. A second private reprimand is unlikely to have any real effect and certainly would not further the objectives of the disciplinary system "to protect the public, to protect the administration of justice, to preserve confidence in the legal profession, and to deter other lawyers from similar misconduct." *Fountain*, 878 A.2d at 1173. *See also* ABA Standard 8.4 Commentary ("An admonition is a sanction which should only be imposed in cases of minor misconduct, where the lawyer's acts cause little or no injury to a client, the public, the legal system, or the profession, and where the lawyer is unlikely to engage in further misconduct. Lawyers who do engage in additional similar acts of misconduct, or who violate the terms of a prior disciplinary order, have obviously not been deterred, and a more severe sanction should be imposed.").

---

(. . . continued)

Maletesta which contradicts his testimony that he did not discuss with Mr. Maletesta the practice monitor and quarterly report condition. (Jt. Ex. 11, p. 4; Tr. at 101, 151). While the Panel has not taken this into account as an aggravating factor under (f), the Panel is troubled by such events.

All of the private sanctions in ODC File Nos. 111901-B and 108318-B, Board Case Nos. 1 and 2, 2004 and ODC File No. 112169-B on which Respondent relies are distinguishable in that none of those cases involve a violation of Procedural Rule 7(c) *while* the lawyer was on disciplinary probation as noted in the ODC Answering Memorandum on Liability and Sanctions.

Respondent had an obligation to "strictly comply with the conditions imposed on him with his earlier private admonition." *Holfeld*, 74 A.3d at 607. The Board finds that a public reprimand with a two-year probation and conditions is the appropriate sanction. The appropriate conditions are:

1. Respondent is prohibited from engaging in the solo practice of law;

2. Respondent is prohibited from acting as managing partner in charge of books and records of a firm;

3. Respondent shall notify any employer of these conditions;

4. Respondent shall seek treatment with Alice R. O'Brien, LPCMH or alternate licensed mental health treatment provider until such time as Ms. O'Brien or an alternate licensed mental health treatment monitor determines such treatment to no longer be recommended, such determination to be communicated to ODC;

5. Respondent shall execute a formal monitoring agreement with DE-LAP and comply with all conditions deemed appropriate by DE-LAP;

6. Respondent shall meet on a monthly basis with a mutually agreed upon practice monitor who will closely review Respondent's legal work and cases. This practice monitor shall provide quarterly reports to ODC of the Respondent's compliance with monitoring;

7. Respondent shall report any violations of the conditions of his probation to ODC directly;

8. Respondent shall cooperate promptly and fully with ODC in its efforts to monitor compliance with his conditions of probation. Respondent shall cooperate with ODC's investigation of any allegations of unprofessional conduct which may come to the attention of ODC. Upon request of ODC, Respondent shall provide authorization for release of information and documentation, to the extent not granted above, to verify compliance with the conditions of probation;

16

9. Respondent shall pay cost of the disciplinary proceedings; and

10. Respondent shall notify ODC of any changes in his employment status within 10 days after such change in employment status.

11932508.2

Respectfully submitted,

_____
Patricia O. Vella (Bar No. 3529)

_____
Jessica Zeldin (Bar No. 3558)

_____
Gary W. Ferguson

Dated: May 25, 2018

Respectfully submitted,

_Patricia O. Vella (signature)_

Patricia O. Vella (Bar No. 3529)


Jessica Zeldin (Bar No. 3558)

_Gary W. Ferguson (signature)_

Gary W. Ferguson

Dated: May 25, 2018