**In the Matter of Raymond S. NADEL, Respondent.**

**No. 559, 2013.**

Supreme Court of Delaware.

Submitted: Dec. 4, 2013.
Decided: Dec. 4, 2013.

Patricia Bartley Schwarz, Esquire, Office of Disciplinary Counsel, Wilmington, Delaware.

Charles Slanina, Esquire, Finger & Slanina, LLC, Hockessin, Delaware, for Respondent.

Before HOLLAND, BERGER and RIDGELY, Justices.

PER CURIAM:

This is a disciplinary proceeding filed by the Office of Disciplinary Counsel ("ODC") against the Respondent, Raymond S. Na-

del ("Nadel"). On June 10, 2013, a Panel of the Board on Professional Responsibility (the "Panel") filed a Report (the "Panel's Report") finding that Nadel engaged in the unauthorized practice of law. The Panel recommended that: Nadel be suspended from practicing law for one year; prohibited from providing advice to any Delaware clients for a period of one year; prohibited from any admission *pro hac vice* for a period of three years; be publicly sanctioned; and pay the costs of the disciplinary proceedings.

Nadel raises three objections to the Panel's Report. Nadel first argues that he was prejudiced by the ODC's decision to prosecute Nadel by the Board on Professional Responsibility instead of the Board on the Unauthorized Practice of Law ("BUPL"). Nadel also contends that the Panel's recommended sanctions violate Equal Protection and exceed the goals of attorney discipline.

We have concluded that Nadel's objections are without merit. We have determined that the factual findings set forth in the Panel's Report are supported by the record. We have independently concluded that the sanctions recommended in the Panel's Report are appropriate.

### *Facts and Procedural History* [1]

Nadel is not a member of the Bar of the Supreme Court of Delaware. He was admitted to the Bars of the State of New Jersey and the Commonwealth of Pennsylvania in 1982. Nadel currently practices in a private firm located in Cherry Hill and Pennsauken, New Jersey.

From April 2009 through September 21, 2012, Nadel engaged in the unauthorized practice of law in Delaware. After he was

---

1. The facts are taken from the Panel's June 10, 2013 Report of the Board on Petition for Discipline unless otherwise noted. *See In re* *Nadel,* No.2012–0139–B and 2012–0253–B (Del.Bd.Prof.Resp. June. 10, 2013) [hereinafter "Panel's Report"].

initially asked to help a patient by a Delaware doctor, Dr. Morris Peterzell, Nadel met with more than seventy-five Delaware residents who were involved in auto accidents. These accidents occurred in Delaware and involved Delaware insurance policies governed by Delaware law. Nadel met with roughly half of his Delaware clients at Dr. Peterzell's medical office in Wilmington. But in each instance, Nadel would attempt to settle the insurance claims on behalf of his Delaware clients. If settlement proved unsuccessful, Nadel would turn the case over to local Delaware counsel to pursue the litigation.

Nadel never filed a lawsuit in Delaware or made any representations to a Delaware court. Further, Nadel never advertised or actively solicited clients. Nor did he ever represent to a Delaware citizen that he was a member of the Delaware bar. But Nadel does admit that by meeting with his Delaware clients in Delaware, he could have unintentionally created the impression that he was licensed to practice law in Delaware. No actual harm resulted from Nadel's representation. But these Delaware clients accounted for ten to fifteen percent of Nadel's legal practice.

In 2012, the ODC filed a disciplinary claim with the Board on Professional Responsibility against Nadel alleging two counts of the unlicensed practice of law in violation of Rules 5.5(b)(1) and 5.5(b)(2) of the Delaware Lawyers' Rules of Professional Conduct.[2] Nadel admitted both violations. Although not a defense, Nadel argued that he was not aware of Rule 5.5 and was under the belief that he was not required to be a licensed Delaware lawyer to represent clients in pre-litigation matters.

After a hearing on the matter, the Panel found by clear and convincing evidence that Nadel had knowingly violated the Delaware Lawyers' Rules. To determine the appropriate sanction, the Board considered four aggravating factors and four mitigating factors. Nadel's aggravating factors included "(1) dishonest or selfish motive, (2) pattern of misconduct, (3) multiple offenses, and (4) substantial experience in the practice of law."[3] His mitigating factors included "(1) absence of a prior disciplinary record, (2) timely good faith effort to make restitution or to rectify misconduct, (3) full and free disclosure to disciplinary board ..., and (4) remorse."[4]

The ODC urged the Panel to recommend a three-year suspension. Nadel argued that a public reprimand would be more appropriate, primarily because the State of New Jersey will likely impose a reciprocal suspension. Despite the parties' contentions, the Panel recommended a one-year suspension in addition to other limitations.

### Standard of Review

We have the "inherent and exclusive authority to discipline members of the Delaware Bar."[5] "We also have the authority to discipline non-Delaware attorneys who provide legal services in this State in violation of our Professional Code

---

2. Rule 5.5(b)(1) provides that "[a] lawyer who is not admitted to practice in this jurisdiction shall not ... establish an office or other systematic and continuous presence in this jurisdiction for the practice of law." And Rule 5.5(b)(2) explains that an out-of-state lawyer shall not "hold out to the public or otherwise represent that the lawyer is admitted to practice law in this jurisdiction."

3. Panel's Report at 9.

4. *Id.* at 10.

5. *In re Abbott*, 925 A.2d 482, 484 (Del.2007) (quoting *In re Froelich*, 838 A.2d 1117, 1120 (Del.2003)).

of Conduct."[6] Although the recommendations of the Panel are helpful, we are not bound by those recommendations.[7] Our role is to review the record independently and determine whether there is substantial evidence to support the Panel's factual findings.[8] We review the Board's conclusions of law *de novo*.[9]

Rule 5.5 of the Delaware Lawyers' Rules of Professional Conduct prohibits a lawyer from practicing in a jurisdiction "in violation of the regulation of the legal profession in that jurisdiction."[10] A lawyer not admitted to practice in Delaware must refrain from establishing a "continuous presence in this jurisdiction for the practice of law."[11] Further, an out-of-state lawyer cannot "hold out to the public or otherwise represent that the lawyer is admitted to practice law in this jurisdiction."[12]

### Forum Selection Proper

■ Nadel first argues that the ODC should not have proceeded against Nadel before the Board on Professional Responsibility, resulting in a harsher penalty than would have been given by the BUPL. As we explained in *In re Tonwe*, the ODC has the authority to prosecute a disciplinary proceeding against a lawyer who engages in professional misconduct with either the

BUPL or the Board on Professional Responsibility.[13] That decision to proceed with one entity or another is a discretionary decision to be made by the ODC.[14] Further, the Board on Professional Responsibility has the power, *without limitation*, to make findings of fact and recommendations for sanctions with respect to disciplinary matters.[15]

Because this is his first disciplinary offense, Nadel argues that if the ODC had pursued his case with the BUPL, he would have received an Order prohibiting him from practicing law in Delaware and other sanctions including limits on *pro hac vice* admissions. Nadel further contends that the ODC's choice to present his case to the Board on Professional Responsibility rather than that BUPL should not result in a more severe sanction. Nadel's arguments, however, lack merit.

■ The Rules of Professional Conduct and the Rules of Disciplinary Procedure provide that the ODC has full discretion to choose the appropriate forum to enforce the Delaware Lawyers' Rules of Professional Conduct. Once a claim is before the Board on Professional Responsibility, the Panel is free to determine an appropriate sanction, subject to the independent review and final determination by this Court. Therefore, Nadel's claim that either the

6. *In re Kingsley*, 950 A.2d 659, 2008 WL 2310289, at \*3 (Del.2008) (TABLE) (footnote omitted) (citing *In re Tonwe*, 929 A.2d 774, 778 (Del.2007); Delaware Lawyers' Rules of Professional Conduct Rule 8.5).

7. *Id.*

8. *Id.*

9. *Id.*

10. Delaware Lawyers' Rules of Professional Conduct Rule 5.5.

11. Rule 5.5(b)(1).

12. Rule 5.5(b)(2).

13. *Tonwe*, 929 A.2d at 778; *see also* Sup.Ct. R. 64(e)(4) (providing that the ODC has the power to "[p]rosecute cases for disciplinary or other action before the Court, the Board on Professional Responsibility, and the Board on the Unauthorized Practice of Law").

14. *See Tonwe*, 929 A.2d at 778 ("The ODC, in a proper exercise of its discretion, elected to proceed under the lawyer disciplinary rules.").

15. Lawyers' Rules of Disciplinary Procedure Rule 2(c).

ODC or the Panel somehow exceeded their authority is without merit.

### No Equal Protection Violation

■ Nadel next contends that the Panel's recommendation of a one-year suspension following his first offense in some way violates Equal Protection. Nadel does not cite any authority in support of this claim or even specify that the Panel's sanction violates either the Delaware or United States Constitution. Rather, Nadel suggests that a Delaware attorney would not receive a one-year suspension as a first-time offender. First, this argument is only speculation. Nadel does not cite to any similar instances of a Delaware attorney with thirty years of legal experience receiving a lesser penalty for similar violations. Second, Nadel admitted to seventy five violations of the Delaware Lawyers' Rules of Professional Conduct. Such conduct cannot be reasonably described as a first-time offense. As a result, Nadel's second objection is without merit.

### Disciplinary Objectives Achieved

■ Nadel's final objection contends that the Panel's recommendation exceeds the goals of attorney discipline. As we have explained, "[t]he objectives of the lawyer disciplinary system are to protect the public, to protect the administration of justice, to preserve confidence in the legal profession, and to deter other lawyers from similar misconduct." [16] Nadel argues that our stated goals can still be achieved through the use of an indefinite period of public probation. In support of this argument, Nadel compares his conduct to our prior decisions in In re Kingsley and In re Tonwe, where we disbarred out-of-state attorneys who knowingly violated a prior cease and desist order.[17] Nadel explains that his conduct is less grievous because he did not openly disregard a court order.

Although Nadel's conduct is less serious than the attorneys in Kingsley and Tonwe, we disagree with his premise that a public probation would adequately fulfill the objective of the lawyer disciplinary systems. A suspension falls within the American Bar Association (ABA) Standards for Imposing Lawyer Sanctions for the unlicensed practice of law. Moreover, a suspension provides a stiff deterrent to other out-of-state lawyers, alerting them that the rules governing the representation of Delaware clients are strictly enforced. We recognize that a suspension in Delaware could affect Nadel's ability to practice law in the State of New Jersey. However, our concerns must be focused on the practice of law within the State of Delaware and the protection of Delaware's citizens from the unauthorized practice of law.

### Factual Findings Approved

■ Having determined that Nadel's objections are without merit, we now turn to our independent examination of whether there is substantial evidence to support the Panel's factual findings and to then decide on an appropriate sanction. In determining the appropriate sanctions for lawyer misconduct, we traditionally follow the American Bar Association (ABA) Standards for Imposing Lawyer Sanctions (the "ABA Standards").[18] This ABA framework requires that we determine "(1) the ethical duty violated; (2) the lawyer's state of mind; and (3) the actual or potential

---

16. In re Bailey, 821 A.2d 851, 866 (Del.2003) (citing In re Figliola, 652 A.2d 1071, 1076 (Del.1995)), reinstatement granted, 842 A.2d 1244 (Del.2004).

17. Kingsley, 2008 WL 2310289, at *4; Tonwe, 929 A.2d at 781.

18. Tonwe, 929 A.2d at 780.

injury caused by the lawyer's misconduct." [19]

█ In this case, Nadel does not dispute any of the Panel's factual findings. The record shows that Nadel provided legal services to at least 75 Delaware residents involved in automobile accidents, representing about ten to fifteen percent of his law practice. Further, Nadel advocated on behalf of these clients when he attempted to settle their claims. He turned over the cases to a Delaware attorney only if litigation was required. Even though Nadel did not represent that he was licensed in Delaware and did not actively solicit Delaware clients, he would often meet with many of these clients in Delaware, likely giving the impression that he was a Delaware lawyer. The record supports the Panel's findings that this conduct constituted the unauthorized practice of law that is prohibited by the Delaware Lawyers' Rules of Professional Conduct, specifically Rules 5.5(b)(1) and 5.5(b)(2).

The record also supports the Panel's finding that Nadel knew that Delaware insurance policies and Delaware law applied in the cases he worked on. Although he claims he was unaware of Rule 5.5 and believed he was allowed to represent Delaware clients in prelitigation matters, Nadel was fully aware that he was not allowed to represent these clients in court or file legal claims on their behalf. Nadel's actions demonstrate an awareness of a violation or at the very least willful ignorance of the rules.

Nadel knew that he could not actively represent Delaware clients in court, but he failed to determine any limits on the prelitigation assistance he thought he could provide. Further, he had every opportunity to learn this information. Nadel regularly worked with licensed Delaware attorneys when a client needed to file a claim in court. Moreover, the Delaware Lawyers' Rules and the case law interpreting those rules are also publicly available—something an experienced attorney from any state would know.

### Sanctions Imposed

█ The ODC and Nadel agree that there was no actual injury resulting from Nadel's unlicensed practice of law. But there was the potential for injury. Nadel could have been confronted with a unique issue of Delaware law or a right of his client that he failed to notice. Further, he could have created a situation where one of his Delaware clients came to rely on his legal assistance in this or a related matter, only to be stranded later when she realized that Nadel could not provide proper legal assistance. This amounts to a potential injury to Nadel's clients.

Having determined Nadel's violation, state of mind, and potential for injury, we now turn to the appropriate sanction. The ABA Standards on the unauthorized practice of law provide four options for sanctioning an attorney and the basis for imposing each sanction. [20] The four options provide for the following sanctions and bases:

7.1 Disbarment is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed as a professional with the intent to obtain a benefit for the lawyer or another, and causes serious or potentially serious injury to a client, the public, or the legal system.

7.2 Suspension is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed

---

19. *Id.*

20. ABA Standards for Imposing Lawyer Sanctions 7.0.

as a professional and causes injury or potential injury to a client, the public, or the legal system.

7.3 Reprimand is generally appropriate when a lawyer negligently engages in conduct that is a violation of a duty owed as a professional and causes injury or potential injury to a client, the public, or the legal system.

7.4 Admonition is generally appropriate when a lawyer engages in an isolated instance of negligence that is a violation of a duty owed as a professional, and causes little or no actual or potential injury to a client, the public, or the legal system.[21]

In this case, Nadel knowingly engaged in conduct that violated the Delaware Lawyer's Rules and caused a potential injury to his clients. Nadel received a substantial financial benefit during this unauthorized practice of law in the State of Delaware. Based on his conduct, the ABA Standards call for a suspension.

The Panel recommended a series of sanctions in addition to a suspension. The recommended sanctions included:

1) [Nadel] be suspended from the practice of law in the State of Delaware for a period of one year;

2) [Nadel] be prohibited from providing advice to any Delaware clients on matters of Delaware law for a period of one year;

3) [Nadel] be prohibited from acting *pro hac vice* on any matter in Delaware for a period of three years;

4) The contents of [its] report be made public; and

5) [Nadel] pay the costs of these proceedings.[22]

The ODC urges this Court to impose a three year suspension. Nadel suggests that a public reprimand along with the Panel's recommendation prohibiting any *pro hac vice* activity is appropriate. We hold that the Panel properly concluded, a one year-suspension, along with the additional limitations that it recommended, would adequately protect the public and the administration of justice, preserve confidence in the legal profession, and deter other lawyers from engaging in similar conduct.

### Conclusion

We adopt the Panel's Report and sanction Raymond S. Nadel in accordance with the Panel's recommendations.