IN THE SUPREME COURT OF THE STATE OF DELAWARE

IN THE MATTER OF A MEMBER  §
OF THE BAR OF THE SUPREME   §        No. 111, 2022
COURT OF DELAWARE,          §
                            §
**ANDRE M. BEAUREGARD**,        §
                            §
Respondent.                 §

Submitted: November 16, 2022
Decided:   January 23, 2023

Before **SEITZ**, Chief Justice; **VAUGHN**, and **TRAYNOR**, Justices.

Upon Review of the Report of the Board on Professional Responsibility. **RECOMMENDATION ACCEPTED. TWO YEAR SUSPENSION IMPOSED WITH CONDITIONS.**

David A. White, Esquire, Chief Disciplinary Counsel, and Kathleen V. Vavala, Esquire, Assistant Disciplinary Counsel, Office of Disciplinary Counsel, Wilmington, Delaware.

John S. Malik, Esquire, Wilmington, Delaware, for Respondent.

**PER CURIAM**:

A panel of the Board on Professional Responsibility ("Board") found that the Office of Disciplinary Counsel ("ODC") had established by clear and convincing evidence that Andre C. Beauregard, Esquire violated Rule 5.3(a)[1] and thereby Rule 3.5(c),[2] Rule 5.3(c)(2),[3] and Rule 8.4(c)[4] of the Delaware Lawyers' Rules of Professional Conduct ("DLRPC"). The Board also concluded that the ODC had not established by clear and convincing evidence that Beauregard violated Rules 5.3(c)(1)[5] or 8.4(a).[6] The violations arose from a private investigator's post-trial contact with a juror without court permission and Beauregard's statements to the Superior Court about the juror contact.

---

[1] Rule 5.3(a) provides that "[w]ith respect to a nonlawyer employed or retained by or associated with a lawyer . . . a partner in a law firm, and a lawyer who individually or together with other lawyers possesses comparable managerial authority in a law firm, shall make reasonable efforts to ensure that the firm has in effect measures giving reasonable assurance that the person's conduct is compatible with the professional obligations of the lawyer."

[2] Rule 3.5(c) provides that a "lawyer shall not . . . communicate with a juror . . . after discharge of the jury unless the communication is permitted by court rule."

[3] Rule 5.3(c)(2) provides that a lawyer is responsible for the conduct of a nonlawyer retained by the lawyer if the nonlawyer's conduct "would be a violation of the Rules of Professional Conduct if engaged in by a lawyer if . . . the lawyer . . . has direct supervisory authority over the person, and knows of the conduct at a time when its consequences can be avoided or mitigated but fails to take reasonable remedial action."

[4] Rule 8.4(c) provides that "[i]t is professional misconduct for a lawyer to . . . engage in conduct involving dishonesty, fraud, deceit or misrepresentation."

[5] Rule 5.3(c)(1) provides that a lawyer is responsible for the conduct of a nonlawyer retained by the lawyer if the nonlawyer's conduct "would be a violation of the Rules of Professional Conduct if engaged in by a lawyer if . . . the lawyer orders or, with the knowledge of the specific conduct, ratifies the conduct involved."

[6] Rule 8.4(a) provides that "[i]t is professional misconduct for a lawyer to . . . violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so or do so through the acts of another."

After a sanctions hearing, the Board recommended that Beauregard be suspended from the practice of law for two years with the opportunity to apply for limited reinstatement after one year to serve as counsel for indigent defendants in the Office of Conflicts Counsel ("OCC") program and with the opportunity to apply for full reinstatement after two years. The ODC did not object to the Board's findings or recommendations. Beauregard objects to the Board's finding that he violated Rule 8.4(c) by making several knowing misstatements. He also argues that none of his misstatements were material to an issue before the court, he should not be subject to enhanced disciplinary penalties based on his disciplinary record because his prior violations were different, and the proposed sanction was excessively punitive and contrary to public policy.

After our independent review of the Board's recommendations, we agree with the Board's findings and adopt the Board's sanction recommendation.

I.

A.

We recount what are, for the most part, undisputed facts. Beauregard was admitted to the Bar in 1986. He is a partner with Brown, Shiels, and Beauregard, LLC ("the Firm"). In 2019 and 2020, the Firm employed Christine Truitt as Beauregard's secretary and paralegal.

3

Beauregard's primary practice area is criminal defense. He has a contract with the OCC to represent indigent criminal defendants. About 60% of Beauregard's workload are OCC cases and 40% are private cases. Before COVID-19, Beauregard was in court most days, usually for one to two hours in the morning and one to two hours in the afternoon. When in the courthouse, Beauregard regularly used his cell phone to communicate with Truitt by email.

In March 2019, Beauregard accepted a case from the OCC to represent Ahmir Bailey. The State charged Bailey with first-degree murder. On October 8, 2019, after a two-week trial, a Superior Court jury found Bailey guilty of first-degree murder. On October 14, 2019, Beauregard filed a motion for a new trial. He based the motion on possible juror bias stemming from a connection between a juror ("the Juror") and Bailey's co-defendant Eugene Riley. A secretary and a paralegal had discovered the possible connection by searching Facebook.

B.

On October 18, 2019, Beauregard retained O'Rourke Investigative Associates ("ORIA"), a private investigative agency owned by Michael O'Rourke, to search for online evidence of a connection between the Juror and Riley. Although Beauregard had not previously used ORIA,[7] the OCC and other criminal defense attorneys had

---

[7] Beauregard typically used two other "old-school" investigators who lacked expertise to conduct online database searches needed in the *Bailey* case. Amended Appendix to Respondent's Opening Brief (hereinafter "App. to Opening Br.") at A467–70 (Liability Hr'g Tr.).

4

regularly worked with ORIA and recommended ORIA to Beauregard. In an email copied to Beauregard, O'Rourke recognized that "[o]bviously we can't speak to the juror or the co-defendants…."[8]

After the OCC authorized ORIA's cost estimate, O'Rourke conducted the online investigation. On October 31, 2019, O'Rourke called Truitt to inform her that he had identified twenty-five common Facebook friends between the Juror and Riley. He suggested that ORIA employee Andrew Stack interview twenty-two of the common friends with a Dover address. Stack was a retired Delaware State Trooper who joined ORIA in September 2019.

In an October 31 email at 1:26 p.m. to Beauregard, Truitt summarized her telephone call with O'Rourke, including O'Rourke's suggestion of in-person interviews of the twenty-two individuals:

> Mike O'Rourke called re our Bailey case.
>
> He has found 25 common friends on Facebook with Desan Riley and [the Juror]. He has addresses for 22 of them and found several that work in the mall here in Dover.
>
> He is sending his guy down one afternoon to try and speak with them to see what the relationship is. . . .
>
> The PI that is working on the case is Andy Stack. . . .
>
> [H]e asked for additional 1500 for him to complete this investigation.[9]

---

[8] App. to Opening Br. at A5.
[9] *Id.* at A59.

Beauregard replied to Truitt at 1:29 p.m.: "Ok.  See if we get get [sic] it done …"[10]

The OCC approved the additional cost in a 3:38 p.m. email to Truitt with a subject line reference "Authorization Request Approved."[11]  A few minutes later, Truitt sent an email to O'Rourke at 3:44 p.m., with a copy to Beauregard, forwarding the OCC's email authorizing the additional expense and conveying Beauregard's approval to conduct the interviews:

> Hello Mike,
> Here is the authorization
>
> I informed Andre today of our conversation and he wants to have to [sic] move forward with the interviews of the 22 individuals.[12]

At 3:47 p.m., O'Rourke responded to this email, copying Beauregard and Stack, and asked: "One more question: am I permitted to speak to [] (the juror)?"[13]  O'Rourke raised the issue because Stack, who was new to ORIA, suggested to O'Rourke that the trial was over, meaning that it was permissible to contact jurors, and that made sense to O'Rourke.[14]  Truitt needed Beauregard to answer the question, so at 3:50 p.m. she sent an email only to Beauregard asking:

> Hello Andre,
>
> Can you answer this question?
> I am not sure if he is allowed to speak directly with the Juror.[15]

---

[10] *Id.*
[11] *Id.*
[12] *Id.*
[13] *Id.*  Neither O'Rourke nor Stack was aware that there was a prohibition against juror contact without court permission after discharge of the jury.  *Id.* at A206–7, A210, A255.
[14] *Id.* at A210.
[15] *Id.* at A52–54.

The email included all the emails preceding it with the subject line "Authorization Request Approved."[16]

At 4:52 p.m. Beauregard responded "Sure he can" in an email he sent only to O'Rourke, not Truitt.[17] According to Beauregard, he mistakenly and carelessly believed that he was re-confirming his instructions for ORIA to proceed with the interviews of the twenty-two non-juror witnesses, not that he was authorizing ORIA to contact the Juror.[18] At 4:58 p.m., O'Rourke responded "Thx" to Beauregard's email.[19]

On November 5, 2019, Stack called Beauregard and reported that he had interviewed the Juror and that the Juror was willing to speak with Beauregard directly.[20] According to Beauregard, he was shocked that Stack had contacted the Juror and directed Stack to shut down the investigation and have no further contact with the Juror.[21] Truitt, who overheard Beauregard on this call, testified that "[Beauregard] was absolutely not happy" and made it clear he was terminating ORIA.[22] According to Stack, Beauregard did not express disapproval of his contact

---

[16] *Id.*
[17] *Id.* at A131–32.
[18] *Id.* at A515–20, A518 (Liability Hr'g Tr.).
[19] *Id.* at A133–36.
[20] *Id.* at A665 (Liability Rep.).
[21] *Id.* at A486 (Liability Hr'g Tr.).
[22] *Id.* at A390. Truitt testified that there was "no question in [her] mind" that Beauregard was terminating ORIA's services. *Id.* at A396.

with the Juror or fire ORIA, but he could not recall if Beauregard directed him to stop working on the matter.[23]  Beauregard testified that he was "dumbfounded" to learn of the juror contact:

> [W]hen he told me about it, it was like, in my mind like they broke into a house and were doing things illegal.  I mean, it just, it just blew my mind because I knew O'Rourke said we are not supposed to talk to the juror.[24]

On November 12, 2019, O'Rourke emailed Beauregard and Truitt a draft of his report, which included Stack's summaries of his interviews.[25]  O'Rourke thanked them for the assignment and said to advise him if they required additional work on the file.[26]  The Juror is identified on the first page of O'Rourke's report.[27]  Stack's summary of his interview with the Juror appears on page three of Stack's summaries.[28]

After Beauregard received the report, he did not tell O'Rourke he disapproved of Stack's contact with the Juror.[29]  Between November 5, 2019, and December 13, 2019 (the date of the hearing discussed below), Beauregard did not inform the Superior Court or the prosecutor of ORIA's contact with the Juror.[30]

---

[23] *Id.* at A257, A312–13.
[24] *Id.* at A486.
[25] *Id.* at A60–70.
[26] *Id.* at A61.
[27] *Id.* at A64.
[28] *Id.* at A69.
[29] *See id.* at A111.
[30] *Id.* at A670 (Liability Rep.).

8

C.

On December 13, 2019, the Superior Court held a hearing on the motion for new trial.[31] Beauregard requested a continuance to file an amended motion.[32] Beauregard reported that he had hired O'Rourke as the private investigator and represented that "Mr. O'Rourke has been working diligently, but we're not there yet and there's more people to be investigated."[33]

The trial judge stated that he was "somewhat reluctant" but nevertheless granted the continuance.[34] In granting the continuance, the court emphasized that "I am not authorizing any interviews of any jurors who were sitting in the trial."[35] The judge repeated:

> There will be no grant of authority to do that [interview jurors] based on speculation. That's all that's been submitted to the Court.
>
> So the Court will not authorize any investigation that is by contacting any jurors that served in this case.
>
> So I will grant the extension, but I'm not authorizing any contact of jurors at this stage.[36]

---

[31] *Id.* at A671.
[32] *Id.* at A139–40 (Dec. 13 Hr'g Tr.).
[33] *Id.* at A142; *see also id.* at A139 ("Mr. O'Rourke . . . is doing the investigation . . . .").
[34] *Id.* at A142–43.
[35] *Id.*
[36] *Id.* at A142–43.

9

Beauregard did not reveal the juror contact but instead inquired about filing motions "with the presentment of evidence," which the court rejected as not currently proper.[37]

The prosecutor then stated that he assumed no juror contact had occurred during the defense investigation and said, "I'm hoping Mr. Beauregard will confirm that and represent that to the Court as well."[38] At this point, Beauregard finally disclosed the contact with the Juror:

> Well, Your Honor, herein lies the rug [sic], is that the initial investigation that was taking place by Mr. O'Rourke had contact, a limited contact with [the Juror]. And it wasn't extensive.[39]

In response to the court's surprise upon hearing this, Beauregard stated that he "didn't direct the investigator on who to speak to."[40] He added:

> I did not direct the private investigator to contact anyone. I left it up to him to do the investigation. And I can instruct him now, obviously, absolutely no contact and we have to go around it.

> But at the time, Your Honor, I just instructed him to find out the issues. I wasn't micro managing his investigation. I want to be candid to the Court.[41]

Later in the hearing, the trial judge stated:

> I will authorize a short recess, but I'm not authorizing any contact with any juror who was called in this case or any of the jurors who were dismissed from the case. There's no authorization for Mr. Beauregard's

---

[37] *Id.* at A143.
[38] *Id.* at A143–44.
[39] *Id.* at A144.
[40] *Id.*
[41] *Id.* at A144–45.

10

investigator to do that.  Apparently he took it on his own, I guess, at this point.[42]

Beauregard replied, "Your Honor, that's the representation to the Court."[43]

On March 16, 2020, the Superior Court denied the motion for new trial.[44]  The court concluded that the Juror and Riley having a mutual Facebook friend who was Riley's cousin and who was also related to the Juror was insufficient for a new trial or an evidentiary hearing.[45]  The court also found a violation of Rule 3.5 by Beauregard based on ORIA's improper contact with the Juror without the court's permission.[46]

## II.

On November 5, 2020, the ODC filed a petition for discipline against Beauregard.  The petition asserted the following counts:

> Count I—a violation of Rule 3.5(c) based on Beauregard authorizing ORIA to contact the Juror without permission by court rule;
>
> Count II—a violation of Rule 8.4(a) based on Beauregard authorizing ORIA to contact the Juror without permission by court rule;
>
> Count III—a violation of Rule 8.4(c) based on Beauregard telling the court he did not direct ORIA to contact anyone and failing to disclose that he had authorized ORIA to contact the Juror;
>
> Count IV—a violation of Rule 5.3(a) based on Beauregard failing to make reasonable efforts to ensure that his firm had in effect measures giving reasonable assurance that ORIA complied with Rule 3.5(c);

---

[42] *Id.* at A146–47.
[43] *Id.* at A147.
[44] *See id.* at A92–104 (Mar. 16, 2020 Order).
[45] *See id.* at A99–103.
[46] *See id.* at A98.

Count V—a violation of Rule 5.3(c)(1) based on Beauregard directing Stack to contact the Juror or ratifying that contact; and

Count VI—a violation of Rule 5.3(c)(2) based on Beauregard's failure to take reasonable remedial action when he had knowledge of Stack's interview of the Juror.

A.

The Board bifurcated the disciplinary hearing, with the first part addressing the charges and the second part addressing the appropriate sanctions. On June 25, 2021, the Board issued a unanimous report finding that the ODC had proven by clear and convincing evidence that Beauregard violated Rule 5.3(a), Rule 3.5(c) by operation of Rule 5.3(a), Rule 5.3(c)(2), and Rule 8.4(c).[47] The Board found that the ODC had not proven by clear and convincing evidence that Beauregard violated Rule 5.3(c)(1) or Rule 8.4(a).

The Board first addressed whether Beauregard violated Rule 3.5(c) (prohibiting juror contact without approval) and Rule 3.5(c) by operation of Rule 8.4(a) (violation of a rule through the acts of another) by authorizing Stack to contact the Juror. The Board was not persuaded by the ODC's argument that Rule 3.5(c) was a strict liability rule, and therefore concluded that the ODC had to show by clear and convincing evidence that Beauregard knowingly assisted or induced Stack to contact the Juror. The Board found that the ODC had not satisfied this burden because Beauregard, an experienced criminal defense attorney, was well-aware of

---

[47] *See id.* at A726 (Liability Rep.); *see id.* at A851 (Sanctions Recommendation).

12

the prohibition against juror contact without court permission, and negligently sent the "Sure he can" email "using his iPhone at the end of a busy day involving court appearances in different matters in both the morning and afternoon."[48] The Board accepted Beauregard's explanation that he meant to send the email as re-confirmation that ORIA could conduct non-juror interviews, not to authorize ORIA to contact a juror.

Next, the Board addressed whether the ODC had shown by clear and convincing evidence that Beauregard violated Rule 3.5(c) by (i) failing to make reasonable efforts to ensure that ORIA's conduct was consistent with his professional obligations as required by Rule 5.3(a) and (ii) ordering ORIA to contact the Juror or knowingly ratifying that contact as prohibited by Rule 5.3(c)(1). The Board concluded that Beauregard had violated Rule 5.3(a) by negligently failing to make reasonable efforts to ensure that ORIA did not contact jurors and by negligently sending the "Sure he can" email to O'Rourke. The Board acknowledged ORIA's expertise and initial statement that there would be no juror contact, but emphasized that Beauregard had never previously worked with ORIA and that the nature of the investigation placed the responsibility on Beauregard to reinforce the

---

[48] *Id.* at A679–81.

requirements of Rule 3.5(c) with ORIA.[49]  As to Rule 5.3(c)(1), the Board found that ODC had not shown by clear and convincing evidence that Beauregard knowingly ordered ORIA to contact the Juror or knowingly or impliedly ratified that contact.

The Board also found that Beauregard violated Rule 5.3(c)(2) by failing to take remedial action after learning on November 5th that Stack had contacted the Juror.  Although Beauregard ended the investigation and chose not to act on the Juror's willingness to speak to him, he did not inform the Superior Court or the prosecutor of the contact until the prosecutor asked him directly at the December 13th hearing.[50]  Nor did he inform O'Rourke of what happened so O'Rourke could ensure that juror contact would not be repeated in ORIA's work for OCC contract attorneys.[51]

Finally, the Board considered whether the ODC had shown by clear and convincing evidence that Beauregard's representations to the Superior Court at the December 13th hearing violated Rule 8.4(c) (prohibiting lawyer "conduct involving dishonesty, fraud, deceit or misrepresentation").  The Board, relying on *In re*

---

[49] *Id.* at A694 ("Respondent had never worked with ORIA before this engagement. . . . ORIA's entire investigative effort would be focused specifically on [the] Juror. Yet Respondent gave no instruction to ORIA at the outset of the engagement regarding Juror contact.").

[50] *See id.* at A706–08 ("In the view of the Panel, Respondent's failure after his November 5th telephone call with Stack to promptly, if not immediately, report to the court and DAG Babowol the improper Juror contact by Stack was a failure by Respondent to take reasonable remedial action to mitigate the consequences of this misconduct.").

[51] *Id.* at A708 ("At a minimum, Respondent could have contacted O'Rourke to alert him about the . . . improper interview of [the Juror] and to reinforce with ORIA . . . that such juror contact – even after discharge of the jury – is expressly prohibited in Delaware . . . .").

*Doughty,*[52] held that both negligent and knowing misrepresentations could violate Rule 8.4(c).[53] The Board found that Beauregard's representation that O'Rourke acted on his own in contacting the Juror was a negligent misrepresentation in violation of Rule 8.4(c).[54] Further, the Board decided that Beauregard's representations that ORIA was still investigating, that he did not direct ORIA on whom to speak to, and that he did not direct ORIA to contact anyone were knowing misrepresentations in violation of Rule 8.4(c).

B.

The Board held the sanctions hearing on October 14, 2021.[55] Beauregard's witnesses included the prosecutor in the *Bailey* case, retired judicial officers, the current and former heads of the Office of Defense Services, and Chief Conflict Counsel. ODC recommended a two-year suspension and, upon reinstatement, prohibiting Beauregard from operating a solo law practice and requiring the supervision of his cases by another lawyer. Beauregard requested a public reprimand or private admonition.

---

[52] 832 A.2d 724, 735 (Del. 2003).

[53] App. to Opening Br. at A715 (Liability Rep.) ("The Panel disagrees with Respondent that only clear and convincing evidence of a knowing misrepresentation, and not a negligent one, can support a finding that Respondent violated Rule 8.4(c).").

[54] *See id.* at A718 ("A reasonable lawyer would not have appeared at the December 13[th] hearing without having conducted a full inquiry into what errors resulted in Stack making contact with [the Juror].").

[55] *See id.* at A728 (Sanctions Hr'g Tr.).

15

In recommending the appropriate sanction, the Board first addressed the four factors set forth in the American Bar Association Standards for Imposing Lawyer Sanctions (the "ABA Standards"). Those factors are: (i) the ethical duty violated; (ii) the attorney's mental state; (iii) the extent of the actual or potential injury caused by the attorney's misconduct; and (iv) aggravating and mitigating factors. For the first three factors, the Board concluded that Beauregard violated Rule 5.3(c) by violating Rule 5.3(a) ) and violated Rule 5.3(c)(2) and Rule 8.4(c); the violations involved negligent and knowing conduct; the violations of Rules 3.5(c) and 5.3(a) caused potential injury to the public and legal system; the violation of Rule 5.3(c)(2) caused actual and potential injury to the legal system and profession; and the violation of Rule 8.4(c) caused actual and potential harm to the public, the legal system, and the profession.

The Board next made a preliminary determination of sanctions. The Board found that: (i) admonition was the presumptive sanction for Beauregard's violation of Rule 3.5(c) under ABA Standard 6.34; (ii) reprimand was the presumptive sanction for Beauregard's violation of Rule 5.3(a) under ABA Standard 7.3; (iii) suspension was the presumptive sanction for Beauregard's violation of Rule 5.3(c)(2) under ABA Standard 7.2; and (iv) suspension was the presumptive sanction for Beauregard's violation of Rule 8.4(c) under ABA Standard 6.12.

16

Finally, the Board considered aggravating and mitigating factors. The Board found that the following aggravating factors under ABA Standard 9.22 were present: (i) prior disciplinary offenses, which included a public reprimand in 2005 for violations of Rules 1.15, 5.3, and 8.4, consent to a private admonition in 2014 for violations of Rules 1.1 and 1.16, consent to a private admonition in October 2017 for violation of Rule 1.4, and a six-month suspension starting in June 2018 for violations of Rules 1.15 and 5.3; (ii) dishonest or selfish motive in making the misrepresentations at the December 13th hearing; (iii) multiple offenses; (iv) refusal to acknowledge the wrongful nature of the conduct;[56] and (v) substantial experience in the practice of the law.

For mitigating circumstances under ABA Standard 9.32, the Board found: (i) full and free disclosure to the disciplinary board; and (ii) his character or reputation. After reviewing the aggravating and mitigating circumstances, the Board recommended that Beauregard be suspended from the practice of law for two years with the opportunity to apply for a limited reinstatement after one year to serve as counsel for indigent defendants in the OCC program and with the opportunity to apply for full reinstatement after two years. In recommending a two-year sanction,

---

[56] The Board agreed that Beauregard was entitled to mount a vigorous defense to ODC's charges and stated "[w]e will neither disregard nor overweigh Respondent's refusal to acknowledge wrongdoing or his decision to conduct a vigorous defense in our deliberations." *Id.* at A875–76.

the Board noted this Court's "incremental system of sanctions based on the lawyer's prior history of discipline."[57]

## III.

Beauregard objects to the Board's report and recommendations on four grounds: (i) the record does not support the Board's finding that Beauregard acted with a "knowing" mental state when he made representations to the court; (ii) his misstatements to the court were immaterial to any issue before the court and were made negligently and not knowingly; (iii) the Board's findings did not support a pattern of similar prior misconduct to justify an increased sanction; and (iv) a two year suspension is excessively punitive and contrary to public policy.

ODC responds that the Board's finding that Beauregard made knowing misstatements in violation of Rule 8.4(c) is supported by substantial evidence and resulted from the Board's assessment of Beauregard's credibility, to which we should defer. ODC also contends that the Board applied ABA Standard 6.12 correctly, used Beauregard's prior disciplinary offenses properly as an aggravating factor, and recommended an appropriate sanction. Finally, ODC argues that the Board's recommended sanction is not excessive or contrary to the purposes of attorney discipline.

---

[57] *Id.* at A880.

## A.

This Court has the inherent and exclusive authority to discipline members of the Delaware Bar.[58] Although the Board's recommendations are helpful, the Court is not bound by them.[59] The Court must review the record independently and determine whether there is substantial evidence to support the Board's factual findings.[60] The Court reviews the Board's conclusions of law *de novo*.[61]

After our independent review of the record, there is substantial evidence to support the Board's findings that Beauregard violated DLRPC 3.5(c), 5.3(a), and 5.3(c)(2). As the Board found, and Beauregard does not contest, Beauregard failed to take reasonable steps to ensure that the non-lawyers assisting him acted consistent with his ethical duties; was negligent when he sent the "Sure he can" email; and failed to take any remedial action to mitigate ORIA's improper juror contact until it was exposed at the December 13th hearing. Thus, we turn to Beauregard's arguments relating to violations of Rule 8.4(c) and the Board's recommended sanction.

## B.

The Board found that Beauregard made several knowing misrepresentations to the Superior Court at the December 13th hearing – ORIA was still investigating,

---

[58] *In re Nadel*, 82 A.3d 716, 719 (Del. 2013).
[59] *Id.* at 720.
[60] *In re Abbott*, 925 A.2d 482, 484 (Del. 2007).
[61] *Id.*

19

he did not direct ORIA to speak to anyone, and he did not direct ORIA to contact anyone.[62] Beauregard argues that those findings lack substantial evidence to support them, but our review of the record demonstrates otherwise. As the Board found, Beauregard represented in his answer to the ODC's petition for discipline that he terminated ORIA before the December 13th hearing,[63] but represented to the court at the December 13th hearing that their investigation was ongoing. In an email he authorized ORIA to conduct interviews and to speak to some or all the twenty-two individuals,[64] but represented to the court at the December 13th hearing that he did not.

Beauregard claims that the Board misinterpreted his statement that he "didn't direct the investigator on who to speak to" and "did not direct the private investigator to contact anyone."[65] As he argues, the statement was not meant literally, but was only intended to convey, however "unartfully," that he was not directing the details or order of ORIA's interviews.[66] Beauregard's statement was, however, significantly broader than what he now says he intended to convey and, in the

---

[62] *See* App. to Opening Br. at A719–25.
[63] *Id.* at A179.
[64] *Id.* at A59.
[65] *Id.* at A78–79 (Dec. 13 Hr'g Tr.).
[66] Opening Br. at 38.

Board's judgment after hearing the witnesses, reflected an effort to distance himself from any blame for ORIA's contact with the Juror.[67]

For his false statement that the ORIA investigation was ongoing, Beauregard argues that he did not knowingly misrepresent the facts because he sought to supplement his "bare bones" motion for a new trial and additional investigation was necessary.[68] He claims that "[n]o final decision had been made by [him] on how or whether the investigation would continue."[69] As we see the record, however, Beauregard told the court at the December 13th hearing that O'Rourke was still investigating but never followed up after O'Rourke's November 12th email to contact him for additional work.[70] Beauregard also testified that he "shut down Stack['s]" investigation after learning of the juror contact.[71] The Board was entitled to make an adverse determination after considering the credibility of the witnesses and their testimony.

Finally, Beauregard contends that the Board had no basis to find that, at the December 13, 2019 hearing, he was trying to distance himself from his negligent authorization of Stack's contact with the Juror. According to Beauregard, he was

---

[67] App. to Opening Br. at A725 (Liability Rep.). In making this determination, the Board considered Beauregard's failure to be candid at the December 13th hearing when the subject of juror contact first arose. *Id.* at A723.

[68] Opening Br. at 33.

[69] *Id.* at 39.

[70] App. to Opening Br. at A668 (Liability Rep.) ("If you should require additional work on this file, please contact me directly.").

[71] *Id.* at A179; *id.* at A522 (Liability Hr'g Tr. at 1041–46) ("I shut down Stack.").

not aware of the "Sure he can email" until April 2020, making it "an impossibility" in December 2019 to distance himself from his negligent authorization of the juror contact.[72] But Beauregard sought to distance himself from the juror contact, not his negligent authorization of it.[73] And even if he was unaware of the authorization provided in his email, Beauregard knew about the improper juror contact before the December 13th hearing and would have been motivated to conceal the improper contact – as confirmed by the fact that he did not reveal the contact until forced to do so by the prosecutor.[74]

The Board's conclusion that he made knowing misstatements at the December 13th hearing in violation of Rule 8.4(c) is supported by substantial evidence.

## C.

Beauregard's remaining objections relate to the recommended sanction. First, he contends that none of the alleged misstatements were material to any issue before the Superior Court and thus do not provide a basis for his suspension under ABA Standard 6.12. He relies on references to materiality in ABA Standard 6.12 and in

---

[72] Opening Br. at 37.

[73] App. to Opening Br. at A725 (Liability Rep.) ("Through these statements, Respondent was attempting to distance himself from the details of the ORIA investigation in light of the unexpected revelation to the court that Stack contacted [the] Juror.").

[74] Beauregard also argues that he did not follow up on the improper juror contact because he was busy with hearings and trials, and the contact was immaterial to the new trial motion. Given the seriousness of improper juror contact, however, an experienced criminal defense attorney like Beauregard would have known that it demanded his immediate attention and disclosure to opposing counsel and the court.

22

DLRPC 3.3, regarding candor toward the tribunal. The plain language of the Standard and the Rule do not, however, support his argument that a false statement to the court must be material to factor into the appropriate sanction.

ABA Standard 6.12 states:

Suspension is generally appropriate when a lawyer knows that false statements or documents are being submitted to the court or that material information is improperly being withheld, and takes no remedial action, and causes injury or potential injury to a party to the legal proceeding or causes and adverse effect or potentially adverse effect on the legal proceeding.

DLRPC 3.3(a)(1) states:

A lawyer shall not knowingly . . . make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer[.]

In each case, a materiality qualifier attaches only after the conjunction "or" followed by further independent actions. It would be a strange interpretation of the ABA Standard and the Rule to ignore false statements to the court so long as they were not material. And in any event, Beauregard's statements related to, and were material to, the Superior Court's questions concerning the new trial motion and the juror contact.

Next, Beauregard contends that the Board should not have considered his prior disciplinary actions as suggestive of "a de facto pattern of conduct" to support

23

a recommended sanction of suspension.[75]   Beauregard agrees, however, that "[s]uspension is generally deemed appropriate when a lawyer knows false statements are submitted to a court."[76]   The Board found, and we have agreed with its findings, that Beauregard made several knowing misrepresentations to the court at the December 13th hearing.   Under ABA Standard 6.12, suspension is the presumptive sanction when an attorney makes knowing misrepresentations to the court.

Beauregard also objects to the Board's findings related to various other aggravating factors.   He claims that the Board gave insufficient weight to character and reputation evidence as a mitigating factor.   Viewing the aggravating and mitigating factors as a whole, however, the aggravating factors are supported by the record[77] and not only outnumber but also outweigh the mitigating factors in Beauregard's favor.[78]   In particular, the aggravating factor of Beauregard's dishonest

---

[75] Opening Br. at 41.

[76] *Id.* at 42.

[77] Beauregard's other objections to the Board's aggravating-and-mitigating-factor analysis are unpersuasive.  As discussed previously, some of his actions were knowing violations made with a dishonest and selfish motive.  He also downplays the multiple offenses as springing from one event but overlooks the fact that his handling of the ORIA investigation and failure to mitigate its consequences unfolded over a period of weeks and months.  Finally, the Board acknowledged Beauregard's due process challenge for his refusal to acknowledge the wrongful nature of his conduct, and "neither disregard nor overweigh [the factor] . . . in [its] deliberations."  App. to Opening Br. at A876 (Sanctions Recommendation).

[78] *See In re Howard*, 765 A.2d 39, 44 (Del. 2000) ("We recognize that the mitigating circumstances significantly outnumber the aggravating circumstances. . . . Nonetheless, we do not believe the mitigating circumstances outweigh the aggravating circumstances in this case.").

24

and selfish motive implicated foundational elements of the legal system.[79] Also important is the extent of his prior disciplinary history given the "principle of progressive discipline" for assigning increasing penalties to reoccurring disciplinary violations.[80] The fact that Beauregard had just recently completed a six-month suspension was a significant factor in the Board's recommendation of an increased suspension.[81] Because the presumptive sanction was suspension, the Board noted correctly that "these partially offsetting factors . . . militate toward an upward adjustment" to Beauregard's sanction.[82]

---

[79] *In re Favata*, 119 A.3d, 1283, 1292 (Del. 2015) ("Two fundamental ethical principles in the Delaware oath are to act with fidelity to the Court and to use no falsehood."); *In re Amberly*, 996 A.2d 793, at *8 (Del. 2010) (TABLE).

[80] App. to Opening Br. at A881 (Sanctions Recommendation); *see In re Guy*, 756 A.2d 875, 887–88 (Del. 2000) (explaining Delaware's system of progressive attorney discipline).

[81] When it recommended a two-year suspension, the Board considered cases where this Court imposed less than a two-year suspension and noted that they not involve attorneys who had been suspended previously. *See, e.g., In re Poliquin*, 49 A.3d 1115, 1118 (Del. 2012) (approving six months and one day suspension of attorney who had been previously the subject of two private admonitions and who corrected his counsel's misrepresentations regarding his disciplinary record one day after those misrepresentations were made); *In re McCann*, 669 A.2d 49, 58 (Del. 1995) (imposing one-year suspension where the lawyer had been previously the subject of a public reprimand and private admonition).

[82] App. to Opening Br. at A878 (Sanctions Recommendation). Beauregard also contends that "[t]he loss, even temporarily, of one's ability to earn income . . . cannot be characterized as anything but punitive." This Court has stated, however, that the effect of losing one's ability to earn income ordinarily do not factor into disciplinary sanctions. *See, e.g., In re Lyle*, 74 A.3d 654 (Del. 2013) ("Lyle would also have us give consideration in our sanction recommendation to the fact that he has young children, and what effect his suspension, if any, would have on them. Unfortunately, we are not permitted to give consideration to this factor.").

Finally, Beauregard contends that the recommended sanction is punitive and contrary to the reason for attorney discipline – to protect the public.[83] Beauregard contends that there was no actual harm because the Juror was not bothered by the contact and there was no adverse impact on the *Bailey* case.[84] He also dismisses the potential harm his misconduct caused as "theoretical."[85]

The Board determined that the 8.4(c) violations "caused actual and potential harm to the public, the legal system, and the profession" because they "undermin[ed] the public trust in the legal system and the profession" and misled the Superior Court.[86] In our view, false statements and a lack of candor have a "significant adverse effect on legal proceedings" given their impact on the administration of justice.[87] It is critical for lawyers "to maintain the standards of personal integrity and honesty" to uphold public confidence in the law, which itself "is the foundation of our entire system of justice."[88] As we have observed before, "the potential for harm in misrepresentations to the court is enormous."[89] The recommended sanction

---

[83] *In re Tos*, 610 A.2d 1370, 1373 (Del. 1992) (the primary purpose of disciplinary proceedings is "to protect the public" and to "foster public confidence in the Bar, to preserve the integrity of the profession, and to deter other lawyers from similar misconduct.").

[84] Reply Br. at 10–11.

[85] *Id.* at 12.

[86] App. to Opening Br. at A863 (Sanctions Recommendation).

[87] *In re Vanderslice*, 116 A.3d 1244, 2015 WL 3858865, at *15–16 (Del. June 19, 2015) (ORDER).

[88] *Howard*, 765 A.2d at 44–45.

[89] *Amberly*, 996 A.2d at *8; *see also Matter of Clyne*, 581 A.2d 1118, 1125 (Del. 1990) ("Moreover, Clyne's misrepresentations to this Court indicate the strong possibility that other clients might be similarly injured in the future."); *In re Davis*, 43 A.3d 856, 863 (Del. 2012) ("Maintaining high standards of professional and personal conduct for persons admitted to the Bar

26

was proportional to the violations and properly considered Beauregard's disciplinary record and the recency of his latest violations.

IV.

The record supports the Board's finding that Beauregard violated Rule 5.3(a) and thereby Rule 3.5(c),) as well as Rule 5.3(c)(2), and Rule 8.4(c). The Court approves the Board's findings and adopts the recommended two-year suspension with the opportunity for limited reinstatement after one year to represent OCC clients.[90] ODC and Beauregard shall confer on the starting date for Beauregard's suspension to permit an orderly transition of his pending matters to other attorneys.

---

of this Court is essential to ensure the proper administration of justice within the judicial branch of our government.").

[90] *See, e.g.*, *Matter of Beauregard*, 189 A.3d 1236, 1255 (Del. 2018) (allowing Beauregard to continue providing criminal defense representation through OCC while suspended); *In re Pankowski*, 2009 WL 2044803, at *1 (Del. July 15, 2009) (permitting suspended lawyer to "provide legal services under the supervision of and in connection with the Superior Court Criminal Conflicts Program").